## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

**DEVON CURRIE**
**DOC# A51859,**

    **Plaintiff,**

v.                               Case No.: 5:23-cv-183-TKW/MJF

**MCKINNEY, ET AL.,**

    **Defendants.**
_____/

### DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT

**McKinnie** ("Defendant"), by and through undersigned counsel, hereby responds to Plaintiff's Motion for Leave to Amend his Complaint ("Motion"). (Doc. 41)[1]. Defendant asserts that Plaintiff's Motion for Leave should be denied for the following reasons:

### STATEMENT OF FACTS

On September 29, 2023, Plaintiff filed his Amended Complaint, which was subsequently served on Defendant. (Docs. 10, 20). Based on the service, undersigned counsel entered an appearance on behalf of Defendant and filed a timely Answer to

---

[1] Each document filed in this case as part of the Electronic Case File will be referenced as "Doc." followed by the document number.

1

Plaintiff's Amended Complaint. (Doc. 25). Based on the Answer being filed, this Court issued a Scheduling Order which initially required that Discovery be completed by July 22, 2024. (Doc. 27).

Toward the end of the Discovery period, on June 14, 2024, counsel for Plaintiff appeared in this case. (Docs. 30, 31). After appearance of counsel, the parties moved to extend the Discovery period, which was granted. (Docs. 37, 38).

On June 25, 2024, Plaintiff provided a proposed Second Amended Complaint to undersigned counsel and asked for Defendant's position on leave to amend the complaint. After reviewing the proposed complaint, Defendant indicated that she would oppose the amendment.

On August 9, 2024, Plaintiff filed an Amended Motion for Leave to amend the complaint.[2] (Doc. 41). As an attachment to Plaintiff's Motion for Leave, Plaintiff provides a proposed copy of the Second Amended Complaint, pursuant to the Northern District's Local Rules. (Doc. 41-1). Plaintiff's proposed Second Amended Complaint makes the following additional changes to this case:

- Plaintiff identifies several other officers who were present during the July 20, 2022, incident and sues them for failure to protect and conspiracy consistent with Plaintiff's Amended Complaint;

- Interference with medical treatment on behalf of Defendant and proposed

---

[2] Plaintiff filed an initial Motion on August 7, 2024, but later amended both the Motion for Leave and the proposed Second Amended Complaint based on Discovery responses provided to Plaintiff. (Doc. 41 at ¶ 6, fn 1).

defendant Green;

- A new 1st Amendment retaliation claim against two new proposed defendants, Heffner and Winterburn; and

- A new 8th Amendment claim against proposed defendants Heffner and Winterburn.[3]

*See* (Doc. 41-1). It is still Defendant's position that Plaintiff's Motion for Leave to Amend and his proposed Second Amended Complaint be opposed, as will be discussed.

## MEMORANDUM OF LAW

**I.   Standard for Leave to Amend**.

The required burden for demonstrating that leave to amend should be given is extremely low. Fed. R. Ci. P. 15(a)(2) ("The court should freely give leave when justice so requires."). Generally, leave to amend should be provided so long as (1) there has not been any undue delay, bad faith, dilatory motive, repeated failures to cure deficiencies in previous amendments; (2) allowing amendment would not cause undue prejudice to the opposing party; or (3) amendment would not be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Hall v. Merola*, 67 F.4th 1282, 1295 (11th Cir.

---

[3] Plaintiff also includes a paragraph in his Motion that he was not attempting to add two new Plaintiffs to the case, as he had done in the original version of his Motion for Leave to Amend. *See* (Doc. 41 at ⁋ 9). According to Plaintiff, the reason why he decided not to include them in this case is because "[upon] reflection, it appears to be the better course not to try to lump the three in a single case." *Id.* Though this is the stated reason by Plaintiff, the actual reason that Plaintiff did not amend to include them is that Defendant had informed Plaintiff that the two additional proposed plaintiffs had not exhausted, and it would be futile to include them in this case.

3

2023); *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). Futility of amendment arises when even after amendment, "the complaint as amended would still be properly dismissed or immediately subject to summary judgment for the defendant." *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007) (relying on *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004)).

Plaintiff's Motion for Leave to Amend is due to be denied in part because amendment would be futile as it relates to certain claims against Defendant and proposed defendants. Defendant's position will be further described below.

## II. Plaintiff states a cause of action against proposed defendants Patterson and Green.

Defendant does not dispute that Plaintiff states a cause of action against proposed defendants Patterson and Green. Moreover, Plaintiff has been diligent in bringing the claims, and it does not appear that the claims are brought in bad faith. Defendant is also not prejudiced by amending in Patterson and Green.

## III. Plaintiff's claims against McKinnie, as amended, are subject to dismissal due to futility of the amendment.

Plaintiff's amendment to continue to include claims against Defendant are futile. Plaintiff did not exhaust the newly added interference with medical treatment claim and prior to proposed amendment of Plaintiff's Complaint, Plaintiff was provided with the opportunity to propound Discovery on Defendant. (Doc. 41 at ¶ 6, fn 1). *See also* (Defendant's Exhibit A). After Discovery has been concluded, it has

4

become clear that Plaintiff fails to state a cause of action against Defendant and that claims against her would be subject to dismissal or summary judgment in her favor.

   a. <u>Plaintiff failed to exhaust the interference with medical treatment claim against Defendant.</u>

Plaintiff failed to exhaust his administrative remedies against Defendant, and this 42 U.S.C. § 1983 action should be dismissed against Defendant due to Plaintiff's failure to exhaust his administrative remedies. Pursuant to the Prison Litigation Reform Act ("PLRA"),

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (2022). This requirement is mandatory. *Ross v. Blake*, 578 U.S. 632, 638-39 (2016); *Alexander v. Hawk*, 159 F. 3d 1321, 1323 (11th Cir.1998); *Harper v. Jenkin*, 179 F. 3d 1311 (11th Cir.1999). Section 1997e(a) requires the plaintiff to exhaust any available administrative remedy *before* he files suit. *Ross*, 578 U.S. at 638-39; *Smith v. Terry*, 491 F. App'x 81, 83 (11th Cir. 2012) (unreported op.); *Cox v. Mayer*, 332 F. 3d 422, 425 (6th Cir. 2006).[1] The United States Supreme Court has held that the PLRA applies to all inmate suits about prison life, whether

---

[1] The Sixth Circuit in *Cox* cited to *Harris v. Garner*, 216 F.3d 970, 973-80 (11th Cir. 2000) (en banc), "[f]or an extended explanation of why 'to bring' means 'to file,'" where the Eleventh Circuit construed the same language ("brought") in the physical injury section of § 1997e to mean "file." *Cox*, 332 F. 3d at 424 n.1.

5

they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion is required whether the plaintiff seeks declaratory and injunctive relief, monetary damages, or both. *Booth v. Churner*, 532 U.S. 731, 734 (2001); *Alexander*, 159 F. 3d at 1325. The requirement is not subject to either waiver by a court, or futility or inadequacy exceptions. *Alexander*, 159 F. 3d at 1325. *See Booth*, 532 U.S. at 741 n.6.

"The [Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e,] exhaustion requirement requires full and proper exhaustion." *See Woodford v. Ngo*, 548 U.S. 81, 93, 126 S. Ct. 2378 (2006). Exhaustion is a *mandatory* pre-condition to filing a suit. *Id.* at 85. Completion of the exhaustion requirement means properly completing each step of the prison's grievance procedures. *Jones v. Bock*, 549 U.S. 199, 219, 127 S. Ct. 910 (2007); *Johnson v. Meadows*, 418 F. 3d 1152, 1158 (11th Cir. 2005); *Zolicoffer v. Scott*, 55 F. Supp. 2d 1372, 1375 (N.D. Ga. 1999) ("The exhaustion requirement mandates a good faith, bona fide effort to comply with [the grievance] procedures for obtaining an administrative remedy."), *affirmed*, 252 F. 3d 440 (11th Cir. 2001).

The Eleventh Circuit Court of Appeal has noted that the policy reasons underlying the requirement of exhaustion are:

> (1) to avoid premature interruption of the administrative process; (2) to let the agency develop the necessary factual background upon which

6

>   decisions should be based; (3) to permit the agency to exercise its discretion or apply its expertise; (4) to improve the efficiency of the administrative process; (5) to conserve scarce judicial resources, since the complaining party may be successful in vindicating rights in the administrative process and the courts may never have to intervene; (6) to give the agency a chance to discover and correct its own errors; and (7) to avoid the possibility that "frequent and deliberate flouting of the administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures.

*Alexander*, 159 F. 3d at 1327 (quoting *Kobleur v. Group Hospitalization & Medical Services, Inc.*, 954 F. 2d 705, 712 (11th Cir. 1992)). The Eleventh Circuit has also stated that the purpose of exhaustion "is to put the [administrative authority] on notice of **all issues** in contention and to allow the [authority] an opportunity to investigate those issues." *Chandler v. Crosby*, 379 F. 3d 1278, 1287 (11th Cir. 2004) (citations omitted). The purpose of filing administrative grievances, as defined by the Florida Department of Corrections ("FDC") inmate grievance procedure,

>   . . . is to provide an inmate with a channel for the administrative settlement of a grievance. In addition to providing the inmate with the opportunity of having a grievance heard and considered, this procedure will assist the department by providing additional means for internal resolution of problems and improving lines of communication. This procedure will also provide a written record in the event of subsequent judicial or administrative review.

Rule 33-103.001(1), Fla. Admin. Code. "The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's procedural rules." *Woodford*, 548 U.S. at 95.

*"Allowing plaintiff to proceed on his unexhausted claim would frustrate the policies behind the mandatory PLRA exhaustion requirement."* *Shields v. Paeplow*, No. 09-21818-Civ-SEITZ, 2010 WL 5419002, at *7 (S.D. Fla. Nov. 16, 2010) (report and recommendation ("R&R") citing *Woodford*, 548 U.S. at 87-94), 2010 WL 5419081 (Dec. 23, 2010) (unpublished order adopting R&R).

According to precedent, all claims must be exhausted prior to filing a lawsuit. *See Jones*, 549 U.S. at 219-24. The district court is tasked with separating the exhausted claims from the unexhausted claims, dismissing the unexhausted claims, and proceeding forward on only the exhausted claims. *Id*.

FDC has established a grievance procedure in Florida Administrative Code, §§ 33-103.001 to 33-103.019. *Chandler*, 379 F. 3d at 1288. Generally, to properly exhaust administrative remedies prisoners must complete a three-step process starting with an informal grievance on a DC6-236 form, followed by a formal grievance on a DC1-303 form, and completed by the submission of a grievance appeal on DC1-303 form. *See* Rules 33-103.005-.007, Fla. Admin. Code ("F.A.C."). The informal and formal grievances are institutional grievances, meaning they are filed at the prison the prisoner is housed at for a response by a prison staff member. *Id*.; *Chandler*, 379 F. 3d at 1287-88. Exhaustion requires that all steps within the grievance process be completed before filing suit, including waiting for a response to the grievance appeal before initiating the judicial action. *See, e.g.*, *Smith*, 491 F.

App'x at 82-83 (stating that, to complete the exhaustion requirement, the inmate was required to wait for the grievance appeal response or for the requisite appeal response time to expire before filing his § 1983 action).

If a grievance appeal is approved for further investigation and the inmate is issued a corrected formal grievance response, an inmate has not exhausted all his available administrative remedies at that point. Specifically, "[i]f the grievance is returned to the institution or facility or privatization commission for further investigation or response, the inmate may, following receipt of that response, re-file with the Office of the Secretary pursuant to Rule 33-103.007, F.A.C., if he is not satisfied with the response." Rule 33-103.007(8), F.A.C. Therefore, an inmate has an additional exhaustion opportunity available to him, where he may re-file an appeal of that amended response to the Office of the Secretary if he is unsatisfied with that new response and needs to do so to fully exhaust his available administrative remedies prior to suing. *See* Rule 33-103.007(7), F.A.C.

In *Turner v. Burnside*, 541 F. 3d 1077 (11th Cir. 2008), the Eleventh Circuit held that "a defense of failure to properly exhaust available administrative remedies under the PLRA should be treated as a matter in abatement." *Id*. at 1082 (*citing Bryant v. Rich*, 530 F. 3d 1368, 1374 (11th Cir. 2008) (holding that "instances exist-such as those involving jurisdictional issues when judges may resolve factual questions. One such instance is when a judge must decide a motion to dismiss for

9

failure to exhaust nonjudicial remedies.")). "Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense . . . is not ordinarily the proper subject for a summary judgment; instead, it 'should be raised in a motion to dismiss or be treated as such if raised in a motion for summary judgment.'" *Bryant*, 530 F. 3d at 1374-1375 (*citing Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F. 3d 365, 368-69 (9th Cir. 1988)). According to *Bryant*:

> Where exhaustion-like jurisdiction, venue, and service of process-is treated as a matter in abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record.

*Id.* at 1376. The Court further held that deciding a motion to dismiss for failure to exhaust administrative remedies is a two-step process:

> First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed . . . If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion.

*Id*. (internal citations omitted).

In this case, Plaintiff has failed to exhaust his administrative remedies. As it relates to this case, Plaintiff has failed to exhaust the internal grievance process created by Defendant and described within the Florida Administrative Code. In support of his contention that he has exhausted his administrative remedies, Plaintiff makes a conclusory statement in his proposed Second Amended Complaint that "[a]ll conditions precedent to this action have been performed or waived." *See* (Doc. 41-1 at 1). However, Plaintiff did not exhaust his administrative remedies.

Prior to filing his complaint, the only grievances which Plaintiff submitted which are related to his claims in this case are attached to his Amended Complaint. *See* (Doc. 10 at 21-28)[4]. No other grievances have been filed Plaintiff related to the July 20, 2022, incident.[5] Within his grievances, Plaintiff only complains about two officers, who according to him, failed to intervene and protect him from being attacked by inmates. (Doc. 10 at 21-29). *See also* (Defendant's Exhibit B). Plaintiff does not indicate that any medical treatment was interfered with, and instead, details

---

[4] Defendant has provided a copy of his formal grievance, log # 2208-102-198 as it is cutoff in the attachment to Plaintiff's Amended Complaint. *See* (Defendant's Exhibit B).

[5] Defendant is in the process of obtaining declarations related to Plaintiff's grievances, but due to the short time frame for a response, has not yet been able to. Plaintiff's counsel was informed of the intent to supplement this Response, and Plaintiff's counsel indicated that he understood that supplement would occur with the declarations. (Defendant's Exhibit C).

the medical treatment he received because of the attack. (Doc. 10 at 21-29). *See also* (Defendant's Exhibit B).

Additionally, Plaintiff cannot now exhaust his claim related to interference with medical treatment because he has already filed his case. Plaintiff cannot exhaust his claims after filing his complaint. *Ross*, 578 U.S. at 638-39; *Smith*, 491 F. App'x at 83; *Brown v. Sikes*, 212 F. 3d 1205, 1207 (11th Cir. 2000). *See also Cox*, 332 F. 3d at 425 (relying on *Harris*, 216 F. 3d at 973-80). As a result, it would be futile to allow Plaintiff to amend his complaint to include a new medical interference claim against Defendant because of his failure to exhaust the claim prior to filing suit.

b. <u>Plaintiff fails to state a cause of action against Defendant.</u>

Plaintiff's attempt to continue to have Defendant remain in this case and add new claims against her should also be denied as futile. Plaintiff's proposed claims against Defendant are that she failed to protect or intervene on his behalf, that she interfered with his medical treatment, and that she participated in a conspiracy to injure Plaintiff. (Doc. 41-1 at 8-11, 12-14).

To demonstrate a failure to protect claim against Defendant, Plaintiff must demonstrate that she was deliberately indifferent to Plaintiff. Recently, the 11th Circuit issued an *en banc* decision which delineated the requirements for demonstrating deliberate indifference:

> For reasons we'll explain, we now hold, in accordance with the Supreme Court's decision in *Farmer v. Brennan*, that in addition to an

> "objectively serious" deprivation, a deliberate-indifference plaintiff must show that the defendant acted with "subjective recklessness as used in criminal law," and that in order to do so, the plaintiff must demonstrate that the defendant actually knew that his conduct – his own actions or omissions – put the plaintiff at substantial risk of serious harm. We add the caveat, likewise prescribed by *Farmer*, that even if defendant "actually knew of a substantial risk to inmate health or safety," he cannot be found liable under the Cruel and Unusual Punishments Clause if he "responded reasonably to th[at] risk."

*Wade v. McDade*, 106 F.4th 1251, 1253 (11th Cir. 2024) (internal citations removed). *See also Farmer v. Brennan*, 511 U.S. 825, 839 (1994).

Further, "prison correctional officers may be held directly liable under § 1983 if they fail or refuse to intervene when a constitutional violation occurs in their presence." *Terry*, 376 Fed. App'x at 896 (citing *Ensly v. Soper*, 142 F. 3d 1402, 1407 (11th Cir. 1998)). "[A]n officer who is present at the scene and who fails to take reasonable steps to protect the victim . . . can be held personally liable for his nonfeasance." *Skritch v. Thornton*, 280 F3d 1295, 1301 (11th Cir. 2002).

In this case, Plaintiff does not demonstrate either a failure to protect or failure to intervene claim. As it relates to the claim against Defendant for failure to protect, Plaintiff has not demonstrated, and discovery has not demonstrated, that Defendant was aware of any subjective risk of harm to Plaintiff. Defendant's responses to Plaintiff's interrogatories demonstrate that she was in a different wing assisting with count when the incident began. (Defendant's Exhibit A at 5-6). After the incident began, she then responded to an emergency call, but was not present prior to the call.

*Id*. There is no allegation in the proposed Amended Complaint that Defendant was aware of any risk to Plaintiff prior to the attack on July 20, 2022, other than a risk associated with prisons in general, *see* (Doc. 41-1 at ¶ 86), which is not enough to demonstrate a cause of action because Defendant was required to know that harm existed. *Wade*, 106 F.4th 1253; *Marbury v. Warden*, 936 F.3d 1227, 1234-35 (11th Cir. 2019).

Moreover, the proposed Amended Complaint acknowledges that Defendant was in M-Dorm "assisting with count" when the incident began. (Doc. 41-1 at ¶¶ 14, 27, 39). The incident on July 20, 2022, occurred in P-Dorm. *Id.* at ¶ 12. There is no documentation that exists which indicates that Defendant was present during the incident. *See e.g.* (Defendant's Exhibit A at 10).

Plaintiff's failure to intervene claim fairs no better. It is undisputed that Defendant was in a different dorm when the attack began and responded to an emergency call over the radio. (Defendant's Exhibit A). Due to Defendant being in a totally different location from when the attack began, there was no opportunity for Defendant to be in a position to "fail or refuse to intervene." *Terry*, 376 Fed. App'x at 896.

Furthermore, Plaintiff's proposed interference with medical treatment claim is also non-existent. Defendant was in a different wing and responded *after* the attack occurred. (Defendant's Exhibit A at 5-6). Once the attack had finished, Plaintiff

14

acknowledges he was rushed to the hospital and received medical treatment. (Doc. 41-1 at ¶¶ 50-52). Plaintiff even further acknowledges that Defendant was one of the individuals who escorted either he, or one of the other inmates were attacked to the hospital. (Doc. 41 at ¶ 7). *See also* (Defendant's Exhibit A at 5-6). There was no interference with Plaintiff's medical treatment.

Finally, Plaintiff's claim of a "conspiracy" between Defendant and the other proposed defendants also fails to demonstrate a cause of action. As demonstrated above, there is no prior-existing knowledge on behalf of Defendant that Plaintiff would be attacked, and she was not able to intervene. Plaintiff also has not demonstrated that any agreement was made between Defendant and the proposed defendants to have Plaintiff harmed, nor could there be based on the lack of awareness of an issue. As a result, Plaintiff's claims against Defendant are due to be dismissed and allowing Plaintiff to amend the Second Amended Complaint with the additional and continuing claims against Defendant would be futile.

**IV.    Plaintiff's claims against proposed defendants Heffner and Winterburn, as amended, are subject to dismissal due to futility of the amendment.**

Plaintiff should not be allowed to amend his complaint to include claims against proposed defendants Heffner and Winterburn because it would be futile to do so. The reason why it would be futile for Plaintiff to add claims against the newly proposed defendants is because he did not exhaust any claims against them.

As with the newly added medical claims against Defendant, Plaintiff failed to exhaust his administrative remedies against proposed defendants Heffner and Winterburn prior to filing suit against them. Within Plaintiff's proposed Amended Complaint, Plaintiff details that during discovery, evidence may have been lost or destroyed by the Florida Department of Corrections, and attributes the destruction to the proposed defendants. (Doc. 41-1 at ¶¶ 54-67, 89-96, 103-108). Plaintiff claims that proposed defendants Heffner and Winterburn retaliated against him for filing grievances and participated in a conspiracy. *Id*. at ¶¶ 54-67, 103-108.

However, Plaintiff filed no informal, formal, or appeals related to any allegations against proposed defendants Heffner and Winterburn. Additionally, the period during which Plaintiff could have filed such grievances has elapsed. *See* § 33-103.011, Fla. Admin. Code.

Consequently, because Plaintiff did not properly file any grievances whatsoever regarding his allegations against proposed defendants Heffner and Winterburn, his claims against them must be dismissed. Plaintiff cannot be allowed to proceed with unexhausted claims. At this point, his deficiency in this case of the claims against proposed defendants Heffner and Winterburn *cannot be cured by filing an amended complaint* because the amendment cannot "change the important historical fact: his administrative remedies were unexhausted when he filed his original complaint." *Smith*, 491 F. App'x at 83.

Furthermore, in a remarkably similar case,[6] a different court addressed this issue and dismissed the claims against the defendant after determining he failed to exhaust. *Kornagay v. Diedeman*, 2019 WL 5549145 (M.D. Fla. 2019). The sister court's decision is persuasive and should be determinative of the claims in this case; the claims are required to be dismissed.

## CONCLUSION

**WHEREFORE**, Defendant respectfully request that this Court deny Plaintiff's Motion for Leave to Amend his Complaint as described above.

        **ASHLEY MOODY**
        **ATTORNEY GENERAL**
        Office of the Attorney General
        The Capital, PL-01
        Tallahassee, Florida 32399-1050
        Telephone: (850)414-3300
        Facsimile: (850)488-4872

        /s Erik Kverne
        Erik Kverne
        Assistant Attorney General
        Florida Bar No. 99829
        Erik.Kverne@myfloridalegal.com

---

[6] Plaintiff's counsel was counsel of record in the referenced case.

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing *Defendant's Response to Plaintiff's Motion for Leave to Amend Complaint* was e-filed and served electronically through CM/ECF on Plaintiff's counsel of record on August 16, 2024.

/s Erik Kverne
Erik Kverne
Assistant Attorney General
Florida Bar No. 99829

**CERTIFICATE OF COMPLIANCE WITH WORD LIMIT**

**I HEREBY CERTIFY** that the above Response totals **4,059** words, not exceeding 8,000 total word maximum created by N.D. Fla. Loc. R. 7.1(F).

/s/ Erik Kverne
Erik Kverne
Assistant Attorney General
Florida Bar No. 99829
