# Exhibit A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

**DEVON CURRIE,**

    Plaintiff,

**vs.**                                                 **Case No.:** 5:23-cv-183-TKW/MJF

**SGT. MCKINNEY AND JANE DOE,**

    Defendants.
_____/

## DEFENDANT'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

**Michelle McKinnie** ("Defendant"), by and through undersigned counsel, and pursuant to Rule 33 of the Federal Rules of Civil Procedure, provides the following Responses and Objections to "Plaintiff's Interrogatories" directed to Defendant, and states the following:

1. Identify all persons who participated in responding to these Interrogatories by their full names, including yourself as the person who answered the Amended Complaint "McKinney" and if you have ever gone by any other names, provide those names and dates that you used them.

    **RESPONSE:** I responded to these questions with the assistance of my attorney, Erik Kverne. I have never gone by a different name.

2. Please state the name of the high school or school district and the year that you graduated high school, whether by diploma or GED.[1]

---

[1] The Interrogatory, as originally phrased, encompassed a separate discrete subpart which has been separated out as a separate interrogatory. *See* Fed. R. Civ. P. 33(a)(1). Two different questions were asked in the original interrogatory.

1

**RESPONSE:** I graduated from Mariana High School in 1986.

2-A.  Summarize your education and work experience since high school graduation, naming each education institution and employer, with city and state where located, and dates (month and year) of attendance or employment, for all education programs and corrections jobs, degrees, certificates, ranks, or work promotions achieved.

**RESPONSE:** I worked at Sunland in Marian, Florida from July 14, 1995, to December 28, 2006. Sunland is a facility that houses individuals with mental health issues. I started at Sunland as a Human Service Worker and end as a Human Service Supervisor.

On December 29, 2006, I began working at Apalachee Correctional Institution in Sneads, Florida as a Correctional Officer Trainee. In either April or May 2007, I graduated to a regular Correctional Officer. On November 16, 2018, I became a Correctional Officer Seargent.

3.  Describe all corrective actions against you, including counseling, by any law enforcement employer, including the date of the action, the date of the alleged incident on which it was based, the reason for the action, the type of action taken, if any, whether you appealed the corrective action taken against you and the outcome of any such appeal.

**OBJECTION:** Defendant objects to this request as the information is irrelevant to this case. Corrective actions outside of the allegations that Plaintiff has sued Defendant for bear no relevance as to Plaintiff's claims about whether Defendant failed to intervene on Plaintiff's behalf on July 20, 2022. Documentation beyond any information relating to Plaintiff's claims would provide no further benefit towards proving Plaintiff's claims. See Fed. R. Civ. P. 26(b)(1).

**RESPONSE:** No corrective action was taken against me because of the incident Plaintiff has sued me for.

4.  Identify all criminal investigations, detentions, arrests, criminal charges, and convictions of yourself initiated by any law enforcement officer or agency before the date of the incident that is the subject of Plaintiff's complaint. Include the following:

   a. The initiation of each investigation;
   b. The initiate of each criminal charge;
   c. Dates of each arrest;
   d. The arresting agency and officer;
   e. The offense(s) charged, if any;
   f. The disposition of the offense(s) charged;
   g. Any other result of the arrest or detention.

**OBJECTION:** Defendant objects to this request as the information is irrelevant to this case. "Criminal investigations, detentions, arrests, criminal charges, and convictions" outside of the allegations that Plaintiff has sued Defendant for bear no relevance as to Plaintiff's claims about whether Defendant failed to intervene on Plaintiff's behalf on July 20, 2022. Documentation beyond any information relating to Plaintiff's claims would provide no further benefit towards proving Plaintiff's claims. See Fed. R. Civ. P. 26(b)(1).

**RESPONSE:** No criminal action was taken against me because of the incident Plaintiff has sued me for.

5. State whether you have ever been a party in any other legal action, indicating whether you were defendant or complainant, and please identify the case by the names of the parties, court, trial docket number, describe in detail the allegations made against you or made by you, and state the outcome of the case, including the terms of any judgment or settlement.

    **OBJECTION:** Defendant objects to this request as the information is irrelevant to this case. Whether Defendant has been a party to any other legal actions outside of the allegations that Plaintiff has sued Defendant for bear no relevance as to Plaintiff's claims about whether Defendant failed to intervene on Plaintiff's behalf on July 20, 2022. Documentation beyond any information relating to Plaintiff's claims would provide no further benefit towards proving Plaintiff's claims. See Fed. R. Civ. P. 26(b)(1).

    **RESPONSE:** I have not been a party to a different case related to the facts of the incident Plaintiff has sued me for.

6. Describe in detail the Florida Department of Corrections (FDC) policy and protocol, as you understand it, for responding to threats of violence by one

3

inmate on another, and responding to inmate-on-inmate attacks that occur in your presence, including direct actions by you, requests for assistance or backup, and reports, including witness reports, if you witness violence, and any FDC rules or regulations that prescribe disciplinary actions against corrections officers who fail to respond to such an attack, including failure to call for backup.

**RESPONSE:** If an inmate relates a threat of violence to me or I witness violence of any sort against an inmate, I would obtain additional information from the inmate, I would immediately call for back up, then I would rely on my training to inform me whether I should immediately intervene or wait for backup, I would create an incident report about the incident, and I would report it to my supervising officer for further action. To my knowledge, the regulations governing corrections officers requires that the described behavior take place or an officer could face additional disciplinary action.

7. Describe in detail the Florida Department of Corrections (FDC) policy, and protocol, as you understand it, for responding to requests for protection and when an inmate informs you that he has been threatened with harm by another inmate and is seeking the assistance of prison staff to secure protection, including immediate actions by you and reports to others and any follow-up.

    **RESPONSE:** If an inmate relates a threat of violence to me, I would obtain additional information from the inmate, I would then get the inmate to a safe location out of the situation, create an incident report about the incident, and report it to my supervising officer for further action. After my supervising officer took over, I may have some additional involvement, but my supervisor would be the main individual addressing the situation.

8. Describe in detail the Florida Department of Corrections (FDC) policy and protocol, as you understand it, for responding to threats of violence by one inmate on another and responding to inmate-on-inmate attacks that occur in your presence, including direct actions by you, requests for assistance or backup, and reports, including witness reports, if you witness violence.

    **RESPONSE:** If an inmate are involved in a violent situation or I witness violence of any sort against an inmate, I would obtain additional information about the incident, I would immediately call for back up, then I would rely on my training to inform me whether I should immediately intervene or wait for

4

> backup, I would create an incident report about the incident, and I would report it to my supervising officer for further action.

9. Describe in detail any training you have received to respond to inmate-on-inmate attacks, including all academy and in-service training, identifying the specific training programs that provided that training.[2]

   **RESPONSE:** I have received 40 yearly hours of training related to my profession. I remember some of the training names including chemical agents, firearms, and defensive tactics. I do not remember the names of additional training but did receive it in additional areas.

9-A. And describe in detail any incidents in which you have had to intervene based on that training, including dates, times, and locations of such incidents.

   **OBJECTION:** Defendant objects to this request as the information is irrelevant to this case. Incidents in which Defendant had to intervene outside of the allegations that Plaintiff has sued Defendant for bear no relevance as to Plaintiff's claims about whether Defendant failed to intervene on Plaintiff's behalf on July 20, 2022. Documentation beyond any information relating to Plaintiff's claims would provide no further benefit towards proving Plaintiff's claims. See Fed. R. Civ. P. 26(b)(1).

   **RESPONSE:** I responded to an ongoing incident on July 20, 2022, in P-Dorm based on an emergency radio call. I was not present when the incident began.

10. Please describe in your own words the events that occurred in P-Dorm, Apalachee Correctional Institution, on or about July 20, 2022, at some time around 10 P.M. in which Plaintiff and other inmates were injured by other inmates and required medical treatment, including the full names of all the persons who were working with you in the Dorm on that night and give a detailed description of the actions each of those persons took.

---

[2] The Interrogatory, as originally phrased, encompassed a separate discrete subpart which has been separated out as a separate interrogatory. *See* Fed. R. Civ. P. 33(a)(1). As with interrogatory #2, two different questions were asked in the original interrogatory.

5

**RESPONSE:** I responded to an ongoing incident on July 20, 2022, in P-Dorm based on an emergency radio call. I was not present when the incident began. I remember taking one of the injured individuals to the infirmary. I also did go to the hospital with one of the individuals that was involved after the fact. I also remember there being discussion about which individual needed to go the hospital first and that the hospital that the individual was sent to was in Tallahassee, Florida. I do not remember anything else about the incident or who the individuals were that were involved.

11. Describe in detail any contact you had with Plaintiff Devon Currie, . . . prior to the date of the matter sued upon, including the substance of any conversations you had, all other persons present, any actions taken, and how the contact was documented.[3]

    **RESPONSE:** I remember talking with Mr. Currie about an issue involving tablets at some point in time. The issue involved Mr. Currie having two tablets and wanting to get one back from property. However, I do not remember when this occurred. I do also remember other points of informal contact, but I do not remember the substance or times of the contact.

11-A. Describe in detail any contact you had with . . . inmate Charles Gaddis (DC# 127714), . . . prior to the date of the matter sued upon, including the substance of any conversations you had, all other persons present, any actions taken, and how the contact was documented.

    **RESPONSE:** I remember Mr. Gaddis' name, and I am sure I had informal points of contact, but do not remember any of the substance of the conversations or what occurred during the contact.

11-B. Describe in detail any contact you had with . . . inmate Brandon Williams (DC# 130662) prior to the date of the matter sued upon, including the substance of any conversations you had, all other persons present, any actions taken, and how the contact was documented.

---

[3] The Interrogatory, as originally phrased, encompassed a separate discrete subpart which has been separated out as a separate interrogatory. *See* Fed. R. Civ. P. 33(a)(1). As with interrogatories # 2, and 9, multiple different questions were asked in the original interrogatory.

**RESPONSE:** I remember Mr. Williams' name, and I am sure I had informal points of contact, but do not remember any of the substance of the conversations or what occurred during the contact.

12. Please state the frequency of the security check and counts required in Dorm-P and the approximate times (as close as possible) of security checks that were conducted between 9:00 P.M. and midnight.

    **RESPONSE:** Count is normally conducted 3 during shift. Security checks are required every thirty minutes. I do not remember the exact times of the checks on the date referenced, but they would have been conducted at around every 30 minutes.

13. If you had a communication with an inmate about a report of an attack by another inmate or a report of an injury that required medical attention, are you required to document that communication in FDC records, and if so, how?

    **RESPONSE:** I am required to create an incident report detailing the contact, I would have the inmate taken to medical for assessment, and I would alert my supervisor for further action.

14. If an inmate communicates with you requesting they be transferred out of a dormitory or unit because they fear an attack by another inmate, are you required to document that communication in FDC records, and if so, how?

    **RESPONSE:** I am required to create an incident report detailing the contact and alert my supervisor for further action.

15. Describe in detail any involvement you had regarding the July 20, 2022, incident that is the subject of this lawsuit, including its aftermath.[4]

    **RESPONSE:** I responded to an ongoing incident on July 20, 2022, in P-Dorm based on an emergency radio call. I was not present when the incident began. I remember taking one of the injured individuals to the infirmary. I also did

---

[4] The Interrogatory, as originally phrased, encompassed a separate discrete subpart which has been separated out as a separate interrogatory. *See* Fed. R. Civ. P. 33(a)(1). As with interrogatories # 2, 9, and 11, multiple different questions were asked in the original interrogatory.

go to the hospital with one of the individuals that was involved after the fact. I also remember there being discussion about which individual needed to go the hospital first and that the hospital that the individual was sent to was in Tallahassee, Florida. I do not remember anything else about the incident or who the individuals were that were involved.

15-A. Describe everything you did prior to the incident.

**RESPONSE:** I remember conducting count in P-Dorm and leaving the dorm to conduct count in O-Dorm. While I was conducting count in O-Dorm, the incident began to occur.

16. Identify all corrections officers, including the names, ranks, and ID numbers who were involved in the July 20, 2022, incident that is the subject of this lawsuit, including backup officers, and its aftermath.[5]

    **RESPONSE:** I do not remember the individuals involved, but I am certain that the officer in charge would have arrived after the fact, along with other officers who arrived in response.

16-A. Identify all corrections officers, . . . who were involved in the July 20, 2022, incident that is the subject of this lawsuit, . . . and specify in detail the full extent of their involvement.

**RESPONSE:** I do not remember the extent of the officers involvement because I do not remember who the officers were that arrived.

17. Describe in detail any communications that you had with Plaintiff Devon Currie, Charles Gaddis (DC# 127714), and Brandon Williams (DC# 130662) on or about July 20, 2022, or at any time relating to the events of July 20, 2022, in which Devon Currie was injured.

    **RESPONSE:** I may have had conversations with one or more of the referenced people, but I do not remember the content of the conversations or when they occurred.

---

[5] The Interrogatory, as originally phrased, encompassed a separate discrete subpart which has been separated out as a separate interrogatory. *See* Fed. R. Civ. P. 33(a)(1). As with interrogatories # 2, 9, 11, and 15, multiple different questions were asked in the original interrogatory.

18. Identify and describe the contents of all reports you wrote or co-wrote and documents you created or co-created relating to the inmate-on-inmate assaults on July 20, 2022, including disciplinary reports, MINS reports, and witness statements you obtained.

    **RESPONSE:** To my knowledge, I did not create any reports related to the described incident.

    For all Objections,

    **ASHLEY MOODY**
    **ATTORNEY GENERAL**
    Office of the Attorney General
    The Capitol, Suite PL-01
    Tallahassee, Florida 32399
    Telephone: (850) 414-3300
    Facsimile: (850) 488-4872

    /s/ Erik Kverne
    Erik Kverne
    Senior Assistant Attorney General
    Florida Bar No.: 99829
    Erik.Kverne@myfloridalegal.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing *Defendant's Responses and Objections to Plaintiff's Interrogatories* was furnished by e-mail to Plaintiff's counsel of record on August 8, 2024.

    /s Erik Kverne
    Erik Kverne
    Assistant Attorney General
    Florida Bar No. 99829
    Erik.Kverne@myfloridalegal.com

**I understand that a false statement in these responses will subject me to penalty for perjury. I declare under penalty of perjury that the foregoing responses are true and correct.**

/s Michelle McKinnie
**Michelle McKinnie**

Executed on this 8th day of August, 2024.