UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

DEVON CURRIE,

    Plaintiff,

vs.

SGT. McKINNEY and JANE DOE

    Defendants.

Case No. 5:23-cv-00183-TKW/MJF

**PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE
TO PLAINTIFF'S MOTION TO AMEND COMPLAINT (ECF 41)**

Plaintiff DEVON CURRIE, through counsel, pursuant to the Court's Order (ECF 46) replies to Defendant McKinney's Response (ECF 43) to his Motion to Amend the Amended Complaint (SAC) (ECF 41), and would show:

1. Plaintiff alleged the attack on Plaintiff had two phases. Sgt. McKinnie and C.O. Green saw his bleeding injuries from the first attack, heard threats, and failed to respond to his pleas for help, (ECF 41-1 at ¶¶ 27-41). McKinnie failed to protect him even if she had left Currie's Wing by the time of the second more violent attack.

2. Where Sgt. McKinnie admitted in discovery that she had been present in Plaintiff's Dorm (Dorm P) that night helping with count[1] even though she was assigned elsewhere, Plaintiff was able to recall her presence during the events pled, as well as the presence of "Jane Doe" (Delisia Green) and Sgt. Antoinette Patterson.

3. Where the Federal Rules of Civil Procedure do not require a plaintiff to plead

---

[1] Defense misreads the SAC (ECF 41-1 at 14) as placing McKinnie *in M Dorm* during the attacks. The SAC alleged rather that McKinnie was *from* M Dorm (assigned to M Dorm but helping in P Dorm). She admits to being in P Dorm during count, which is when the first phase of the attack took place, and then moving on to O Dorm. (ECF 41-1 at ¶¶ 14, 27, 39).

1

legal theories but only facts supporting his claim, Plaintiff's having pled the factual basis for Defendants' failure to render him care has complied with the Rules.

    4.   Plaintiff criticized the failure to protect and suffered retaliatory punishment by placement on Close Management by prison officials as if he were an attacker. He exhausted his grievances on the retaliation. He did not know at the time he grieved the role of Capt. Eric Heffner and Inspector James Winterburn in engineering his CM placement. These two officials reviewed the video and then "disappeared" it while conveying a version of events that cast Plaintiff as an attacker. Still, Plaintiff rightly characterized and fully grieved the wrongful acts and motives. (Exh. 1).[2]

## MEMORANDUM OF LAW

Courts should "freely give leave [to amend] when justice so requires." Fed.R.Civ.P. 15(a)(2). A plaintiff must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." There is no need to plead legal theories. *Brisk v. Shoreline Found., Inc.*, 654 F. App'x 415, 417 (11th Cir. 2016); *Sams v. United Food & Comm'l Workers Int'l Union*, 866 F.2d 1380, 1384 (11th Cir. 1989).

### A. Plaintiff Adequately Grieved Defendants' Failure to Render Care

Having provided notice of the facts giving rise to a cause of action for failure to protect and interfering with treatment, Plaintiff is not required to name every person who contributed to those wrongful acts but only such facts of which he has knowledge. As made clear in *Jones v. Bock*, 549 U.S. 199 (2007), "the PLRA requires

---

[2] Plaintiff was known as a writ writer and had been vocally critical of the failure of officers to protect him. Plaintiff can show that placement on CM is often used as a "warning shot."

exhaustion of 'such administrative remedies as are available,' 42 U.S.C. § 1997e(a), but nothing in the statute imposes a 'name all defendants' requirement." *Id*. at 217. "A prisoner need not name any particular defendant in a grievance in order to properly exhaust his claim." *Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1218 (11th Cir. 2010) (citing *Jones*, 549 U.S. at 219). While § 1997e(a) requires a prisoner to "provide as much relevant information as he reasonably can in the administrative grievance process, it does not require that he do more than that." *Brown v. Sikes*, 212 F.3d 1205, 1207 (11th Cir. 2000). A key purpose of the exhaustion requirement, as well as Florida's administrative grievance procedure, is to alert prison officials to a problem and to give them an opportunity to address complaints internally before the initiation of a lawsuit. *Parzyck*, 627 F.3d at 1219 (citing *Jones*, 549 U.S. at 219; *Woodford v. Ngo,* 548 U.S. 81, 93 (2006); Fla. Admin. Code § 33-103.001(1).

### B. Plaintiff Pled Retaliatory Placement on Close Management

After the attacks and Plaintiff's hospitalization, Capt. Eric Heffner and Inspector James Winterburn reviewed the surveillance video, observing the attack and the persons involved. These two officers would have seen that Plaintiff was a victim of the attack, not a perpetrator. Nevertheless, they represented Plaintiff as an attacker. Records show the video was preserved but Plaintiff's efforts to retrieve the recording showed only a blank CD attached to the report. Not knowing these facts or the role of these two prison officials at the time, Plaintiff grieved as follows:

> I am writing this Appeal because I have been approved for CM1 for defending myself [in] an attack that was motivated by a hate crime. These are the facts of the case as I will state below, and it will show that I should never been

3

recommended, much less approved for CM. (1) I was attacked on two seperate occasions + the very first attack happened in plain view of 2 officers and was carried out by 3 members of the Latin King organization. There excuse for attacking me that I walked by the shower on my way to a completely different sink area that is separated by a block wall and about 15 to 20 feet. I never entered the shower area or looked that way. But it seems that sense I'm openly gay that everyone here *including Administration* agrees that this simple innocent act warrented this brutal attack. Also for the record *everything I say here can be corroborated by video footage*. (2) after this initial attack I thought it best to leave this environment so I immediately started packing my property and waited to alert one of these officers personally because formal count happend to be in progress. Even though these 2 officers were clearly aware of the activities going on, specifically the attack on myself, I again tried to alert them to my dire situation in order to be escorted from the dorm, only to be told I'm busy and never even looked at me. (3) As the officer was leaving, several of these gang members started yelling racial and anti-gay slurrs, including one that stick out in my mind. "You faggots got to leave the dorm or I'll kill you, especially you niggers." Since the officers were clearly not going to intervene and my life was in mortal danger, my only logical choice and decision was to attempt to talk my way out of the situation. Two other inmates who noticed my situation and were also gay felt they were possibly collateral targets decided to attempt to go with me to talk to these oppresors. (4) we were immediately attacked verbally followed by physical attacks almost simultaneously with knives sticks, buckets. Myself, Brandon Williams #130662, Charles Gaddis #127714, were forced to defend ourselves against this abrupt and unprovoked attack. Myself + the 2 others never had weapons. (6) There were at least 8 Latin King members against myself and the 2 mentioned names and they all had at least one weapon each. (7) The three of us had to be taken to the hospital, myself to I.C.U.[…] (8) All 6 of the Latin King members received disciplinary actions in the form of DR's and neither myself or the two mentioned names did, *which in itself is further proof that this institution knows we were strictly victims attempting to defend or lives from this unwarrented hate crime. (9) Since it was at least a couple weeks after these Latin Kings were served CM papers that I myself recieved CM papers, while also on Protective Management which none of the Latin Kings were, say to me two obvious things: One: that somehow Administration came to the agreement several weeks after the fact that I was rightfully attacked because I am a gay black male because in the beginning I was treated as the victim I was and was never in danger of any disciplinary action. Two, that I have no right to defend myself at any cost, even when 2 sworn D.O.C. officers were present through all of this and refused to act or do their job in the slightest sense or attempt to stop or even delay or enter this attempted deadly attack even though they had several opportunities*. (10) I am not a gang member even though the CM recommendation stated this is believed to be STG related and purposefully

slanted in a way as to portray everyone involved as a gang member, and also made to seem that I had a weapons, or never really identified the fact that I was critically injured or severly outnumbered during this attack. (11) This attack was motivated by hate, hate for myself because I am a gay, black and open about it, and this was confirmed by the attackers themselves during the attack. These are the facts as I know them, (11) in total that absolutly prove I am a victim in this and had no choice in this matter but to physically defend myself. As no other help was available and all avenues of escape were cut off there is no way at all to justify putting me on CM1 right beside the people who attacked me, as if I also had a knife and attacked them because of what they believe, like our actions were somehow equal. […]

(Exh. 1, Grievance Appeal Log No. 22-6-28556. *Emphasis added*).

When he grieved these events, Plaintiff did not know the role of Heffner and Winterburn as the architects of his punitive placement in Close Management. The fact that Plaintiff was not able to name the officials (except to the extent that he was aware prison officials were involved), does not change the fact that he grieved the underlying wrongful acts and rightly attributed their motives.

WHEREFORE, Plaintiff moves this Honorable Court for its Order granting Plaintiff's Motion to Amend the Amended Complaint as to all counts.

Respectfully Submitted,

| | |
|---|---|
| */s/ Joshua Tarjan* | s/James V. Cook |
| Joshua Tarjan (FBN 107092) | James V. Cook, Esq., FBN 0966853 |
| The Tarjan Law Firm P.A. | Law Office of James Cook |
| 12372 SW 82 Avenue | 314 West Jefferson Street |
| Pinecrest, FL 33156 | Tallahassee, Florida 32301 |
| (305) 423-8747; (786) 842-4430 (fax) | (850) 222-8080; 850 561-0836 fax |
| josh@tarjanlawfirm.com | cookjv@gmail.com |
| *Attorney for Plaintiff* | *Attorney for Plaintiff* |

I CERTIFY the foregoing was filed electronically on 9/3/24 and served on all counsel registered with the CM/ECF electronic mail system:

*/s/James V. Cook*

5