**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**

**DEVON CURRIE
DOC# A51859,**

      **Plaintiff,**

**v.**                           **Case No.: 5:23-cv-183-TKW/MJF**

**MCKINNIE, ET AL.,**

      **Defendants.**

_____/

**DEFENDANT'S MOTION TO DISMISS PUNITIVE DAMAGES AND
COUNT II OF PLAINTIFF'S SECOND AMENDED COMPLAINT**

     **McKinnie** ("Defendant"), by and through undersigned counsel, and hereby

moves this Court to dismiss Plaintiff's Second Amended Complaint ("Complaint").

(Doc. 52).[1] Defendant asserts that Plaintiff's requested punitive damages should be

dismissed and that Count II of Plaintiff's claims are due to be dismissed and in

support, Defendant states the following:

**STATEMENT OF FACTS**

     On July 5, 2023, Devon Currie (DC# A51859) ("Plaintiff") filed his initial

complaint with this Court.  *See* (Doc. 1 at 1). Plaintiff later amended his complaint,

---

[1] Each document filed in this case as part of the Electronic Case File will be
referenced as "Doc." followed by the document number.

(Doc. 10), and eventually motioned this court for leave to file a second amended complaint. (Doc. 41). Defendant opposed Plaintiff's motion for leave arguing that portions of the proposed amendment should be denied as futile, (Docs. 43, 49), and this Court granted Plaintiff leave to file his Complaint. (Doc. 51). After this Court granted leave, Plaintiff filed his Complaint, which is the operative pleading in this case. (Doc. 52). Based on the date of filing of Plaintiff's Complaint, Defendant's Responsive Pleading is due by October 8, 2024.

Within his Complaint, Plaintiff includes a new Count II against Defendant and unserved co-defendant Delisha Green. (Doc. 52 at 9-10). Count II consists of a claim against Defendant for interference with Plaintiff's medical treatment. *Id*. Count II was not ever raised in any previous version of Plaintiff's complaint, *see* (Docs. 1, 10) and is attempting to be added into this case for the first time.

## **MOTION TO DISMISS STANDARD**

In deciding a motion to dismiss, the Court must accept all well-pleaded factual allegations in a complaint as true and take them in the light most favorable to plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "To survive dismissal, the complaint's allegations must plausibly suggest that the [plaintiff] has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff's complaint should be dismissed." *James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1274 (11th Cir.2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555–56 (2007). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1950 (2009). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949. Additionally, dismissal is warranted if, assuming the truth of the factual allegations of the complaint, there is a dispositive legal issue which precludes relief. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

## <u>MEMORANDUM OF LAW</u>

I.    **Plaintiff failed to exhaust his administrative remedies as it relates to the alleged actions of Defendant related to interference with his medical treatment.**

Plaintiff failed to exhaust his administrative remedies against Defendant, and this 42 U.S.C. § 1983 action should be dismissed against Defendant due to Plaintiff's failure to exhaust his administrative remedies. Pursuant to the Prison Litigation Reform Act ("PLRA"),

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (2022). This requirement is mandatory. *Ross v. Blake*, 578 U.S. 632, 638-39 (2016); *Alexander v. Hawk*, 159 F. 3d 1321, 1323 (11th Cir.1998);

*Harper v. Jenkin*, 179 F. 3d 1311 (11th Cir.1999). Section 1997e(a) requires the plaintiff to exhaust any available administrative remedy *before* he files suit. *Ross*, 578 U.S. at 638-39; *Smith v. Terry*, 491 F. App'x 81, 83 (11th Cir. 2012) (unreported op.); *Cox v. Mayer*, 332 F. 3d 422, 425 (6th Cir. 2006).[1] The United States Supreme Court has held that the PLRA applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion is required whether the plaintiff seeks declaratory and injunctive relief, monetary damages, or both. *Booth v. Churner*, 532 U.S. 731, 734 (2001); *Alexander*, 159 F. 3d at 1325. The requirement is not subject to either waiver by a court, or futility or inadequacy exceptions. *Alexander*, 159 F. 3d at 1325. *See Booth*, 532 U.S. at 741 n.6.

"The [Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e,] exhaustion requirement requires full and proper exhaustion." *See Woodford v. Ngo*, 548 U.S. 81, 93, 126 S. Ct. 2378 (2006). Exhaustion is a *mandatory* pre-condition to filing a suit. *Id.* at 85. Completion of the exhaustion requirement means properly completing each step of the prison's grievance procedures. *Jones v. Bock*, 549 U.S.

---

[1]  The Sixth Circuit in *Cox* cited to *Harris v. Garner*, 216 F.3d 970, 973-80 (11th Cir. 2000) (en banc), "[f]or an extended explanation of why 'to bring' means 'to file,'" where the Eleventh Circuit construed the same language ("brought") in the physical injury section of § 1997e to mean "file." *Cox*, 332 F. 3d at 424 n.1.

199, 219, 127 S. Ct. 910 (2007); *Johnson v. Meadows*, 418 F. 3d 1152, 1158 (11th Cir. 2005); *Zolicoffer v. Scott*, 55 F. Supp. 2d 1372, 1375 (N.D. Ga. 1999) ("The exhaustion requirement mandates a good faith, bona fide effort to comply with [the grievance] procedures for obtaining an administrative remedy."), *affirmed*, 252 F. 3d 440 (11th Cir. 2001).

The Eleventh Circuit Court of Appeal has noted that the policy reasons underlying the requirement of exhaustion are:

> (1) to avoid premature interruption of the administrative process; (2) to let the agency develop the necessary factual background upon which decisions should be based; (3) to permit the agency to exercise its discretion or apply its expertise; (4) to improve the efficiency of the administrative process; (5) to conserve scarce judicial resources, since the complaining party may be successful in vindicating rights in the administrative process and the courts may never have to intervene; (6) to give the agency a chance to discover and correct its own errors; and (7) to avoid the possibility that "frequent and deliberate flouting of the administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures.

*Alexander*, 159 F. 3d at 1327 (quoting *Kobleur v. Group Hospitalization & Medical Services, Inc.*, 954 F. 2d 705, 712 (11th Cir. 1992)). The Eleventh Circuit has also stated that the purpose of exhaustion "is to put the [administrative authority] on notice of **all issues** in contention and to allow the [authority] an opportunity to investigate those issues." *Chandler v. Crosby*, 379 F. 3d 1278, 1287 (11th Cir. 2004) (citations omitted). The purpose of filing administrative grievances, as defined by the Florida Department of Corrections ("FDC") inmate grievance procedure,

. . . is to provide an inmate with a channel for the administrative settlement of a grievance. In addition to providing the inmate with the opportunity of having a grievance heard and considered, this procedure will assist the department by providing additional means for internal resolution of problems and improving lines of communication. This procedure will also provide a written record in the event of subsequent judicial or administrative review.

Rule 33-103.001(1), Fla. Admin. Code. "The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's procedural rules." *Woodford*, 548 U.S. at 95. *"Allowing plaintiff to proceed on his unexhausted claim would frustrate the policies behind the mandatory PLRA exhaustion requirement." Shields v. Paeplow*, No. 09-21818-Civ-SEITZ, 2010 WL 5419002, at *7 (S.D. Fla. Nov. 16, 2010) (report and recommendation ("R&R") citing *Woodford*, 548 U.S. at 87-94), 2010 WL 5419081 (Dec. 23, 2010) (unpublished order adopting R&R).

According to precedent, all claims must be exhausted prior to filing a lawsuit. *See Jones*, 549 U.S. at 219-24. The district court is tasked with separating the exhausted claims from the unexhausted claims, dismissing the unexhausted claims, and proceeding forward on only the exhausted claims. *Id.*

FDC has established a grievance procedure in Florida Administrative Code, §§ 33-103.001 to 33-103.019. *Chandler*, 379 F. 3d at 1288. Generally, to properly exhaust administrative remedies prisoners must complete a three-step process

6

starting with an informal grievance on a DC6-236 form, followed by a formal grievance on a DC1-303 form, and completed by the submission of a grievance appeal on DC1-303 form. *See* Rules 33-103.005-.007, Fla. Admin. Code ("F.A.C."). The informal and formal grievances are institutional grievances, meaning they are filed at the prison the prisoner is housed at for a response by a prison staff member. *Id.*; *Chandler*, 379 F. 3d at 1287-88. Exhaustion requires that all steps within the grievance process be completed before filing suit, including waiting for a response to the grievance appeal before initiating the judicial action. *See, e.g.*, *Smith*, 491 F. App'x at 82-83 (stating that, to complete the exhaustion requirement, the inmate was required to wait for the grievance appeal response or for the requisite appeal response time to expire before filing his § 1983 action).

If a grievance appeal is approved for further investigation and the inmate is issued a corrected formal grievance response, an inmate has not exhausted all his available administrative remedies at that point. Specifically, "[i]f the grievance is returned to the institution or facility or privatization commission for further investigation or response, the inmate may, following receipt of that response, re-file with the Office of the Secretary pursuant to Rule 33-103.007, F.A.C., if he is not satisfied with the response." Rule 33-103.007(8), F.A.C. Therefore, an inmate has an additional exhaustion opportunity available to him, where he may re-file an appeal of that amended response to the Office of the Secretary if he is unsatisfied

with that new response and needs to do so to fully exhaust his available administrative remedies prior to suing. *See* Rule 33-103.007(7), F.A.C.

In *Turner v. Burnside*, 541 F. 3d 1077 (11th Cir. 2008), the Eleventh Circuit held that "a defense of failure to properly exhaust available administrative remedies under the PLRA should be treated as a matter in abatement." *Id*. at 1082 (*citing Bryant v. Rich*, 530 F. 3d 1368, 1374 (11th Cir. 2008) (holding that "instances exist-such as those involving jurisdictional issues when judges may resolve factual questions. One such instance is when a judge must decide a motion to dismiss for failure to exhaust nonjudicial remedies.")). "Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense . . . is not ordinarily the proper subject for a summary judgment; instead, it 'should be raised in a motion to dismiss or be treated as such if raised in a motion for summary judgment.'" *Bryant*, 530 F. 3d at 1374-1375 (*citing Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F. 3d 365, 368-69 (9th Cir. 1988)). According to *Bryant*:

> Where exhaustion-like jurisdiction, venue, and service of process-is treated as a matter in abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record.

*Id*. at 1376. The Court further held that deciding a motion to dismiss for failure to exhaust administrative remedies is a two-step process:

> First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed . . . If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion.

*Id*. (internal citations omitted).

In this case, Plaintiff has failed to exhaust his administrative remedies. As it relates to this case, Plaintiff has failed to exhaust the internal grievance process created by Defendant and described within the Florida Administrative Code. In support of his contention that he has exhausted his administrative remedies, Plaintiff makes a conclusory statement in his proposed Second Amended Complaint that "[a]ll conditions precedent to this action have been performed or waived." *See* (Doc. 52 at ¶ 4). However, Plaintiff did not exhaust his administrative remedies.

Prior to filing his complaint, the only grievances which Plaintiff submitted which are related to his claims in this case are attached to his previous Amended Complaint. *See* (Doc. 10 at 21-28). *See also* (Defendants' Exhibit A). No other grievances have been filed Plaintiff related to the July 20, 2022, incident. (Docs. 44-1, 44-2).

In his Reply to Defendant's Response to Plaintiff's Motion for Leave, Plaintiff references an Appeal in which he complains about his placement on CM I. *See* (Doc.

48, 48-1). *See also* (Docs. 49, 49-1). Plaintiff claimed that the line of grievances complaining about his CM I placement exhausted his claims because of the pontification and speculation about the motivations on page 2 of the appeal. *See* (Docs. 48 at 3-5, 49 at 49).

Recently, on September 23, 2024,[2] Plaintiff's deposition was taken, and during the deposition, Plaintiff was asked about the appeal and the grievances preceding it which were referenced in his Reply.[3] During the questioning by Defendant, Plaintiff repeatedly indicated that the grievances "have nothing to do with this case." Plaintiff also repeatedly indicated that the grievances referenced in his Reply were not the grievances intended to exhaust the claims in this case.

Now, within the only grievances related to his claims, Plaintiff only complains about two unidentified officers, who according to him, failed to intervene and protect him from being attacked by inmates. (Doc. 10 at 21-29). *See also* (Defendant's Exhibit A). Plaintiff does not indicate that any medical treatment was interfered with and does not even detail or complain about the medical treatment he received

---

[2] Undersigned counsel proffers this information because the transcript of the deposition has not yet been completed, though Defendant did request a copy of it. If necessary, Defendant will provide excerpts of the transcript related to this proffer.

[3] Defendant does note that Plaintiff objected during this line of questioning based on asking for a legal conclusion. Regardless of the objection, Defendant continued to ask Plaintiff questions about Plaintiff's purpose in submitting the grievances relied upon by Plaintiff's counsel.

because of the attack. (Doc. 10 at 21-29). *See also* (Defendant's Exhibit A). Instead, and as an additional proffer based on questioning during his September 23, 2024, deposition, Plaintiff indicated that he fell unconscious during the July 20, 2022, incident which caused him harm and that he woke up in medical and was receiving medical treatment. *See e.g.* (Doc. 52 at ¶¶ 49-52). During his deposition, Plaintiff further did not indicate that he was harmed after the alleged first incident, *see* (Doc. 52 at 2-5), and was only concerned with being placed in Protective Management at the time, not receiving medical treatment.[4]

As a result of Plaintiff's grievances not mentioning lack of medical treatment in any manner, the Florida Department of Corrections was not placed on notice of an issue related to his medical treatment, and never had an opportunity to address or cure the problem prior to being "haled into federal court." *Woodford*, 548 US at 89. Nor does Plaintiff's decision to include Count II without exhausting the issue prior to filing suit promote the intended efficiency of the required by exhaustion. *See Id*.

Additionally, Plaintiff cannot now exhaust his claim related to interference with medical treatment because he has already filed his case. Plaintiff cannot exhaust his claims after filing his complaint. *Ross*, 578 U.S. at 638-39; *Smith*, 491 F. App'x at 83; *Brown v. Sikes*, 212 F. 3d 1205, 1207 (11th Cir. 2000). *See also Cox*, 332 F.

---

[4] Like with the proffer regarding Plaintiff's grievances, Defendant will supplement with Plaintiff's deposition testimony, if necessary.

3d at 425 (relying on *Harris*, 216 F. 3d at 973-80). Likewise, the period for exhausting his claims under the Florida Administrative Code has expired. Rule 33-103.011(1)(b)(2), Fla. Admin. Code. As a result, Plaintiff's Count II against Defendant is due to be dismissed because of his failure to exhaust the claim prior to filing suit.

## II.     Plaintiff's Request for Punitive Damages must be dismissed.

Punitive damages are statutorily barred. "Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." 18 U.S.C. §3626(a)(1)(A). Moreover, to grant prospective relief, the Court must "fin[d] that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." *Id.* Furthermore, the Court must "give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief." *Id.*

Section 3626(a)(1)(A) applies to punitive damages because "prospective relief" is defined under the statute as "all relief other than compensatory monetary damages." 18 U.S.C. §3626(g)(7) (2023). *See also Johnson v. Breeden*, 280 F.3d 1308, 1325 (11th Cir. 2002) (finding that the plain language of the definition provision is clear and that "punitive damages are prospective relief").

As a categorical matter, punitive damages cannot satisfy the strict requirements of section 3626(a)(1)(A). First, punitive damages are never necessary to correct a violation of a Federal right. This is because "correction" of violation is accomplished through compensatory damages and punitive damages are, by their nature, never corrective:

> Although compensatory damages and punitive damages are typically awarded at the same time by the same decisionmaker, they serve distinct purposes. The former are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct. The latter, which have been described as "quasi-criminal," operate as "private fines" intended to punish the defendant and to deter future wrongdoing. A jury's assessment of the extent of a plaintiff's injury is essentially a factual determination, whereas its imposition of punitive damages is an expression of its moral condemnation.

*Cooper Indus., Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 432 (2001) (cleaned up).

Second, even if an award of punitive damages could be thought reasonably "necessary" to correct a legal violation, such an award could not satisfy the additional, stringent limitations imposed by the PLRA—i.e., the requirements that the relief be "*narrowly drawn*," "extend[] *no further than necessary* to correct the violation of the Federal right," and be "*the least intrusive means necessary* to correct the violation of the Federal right." 18 U.S.C. §3626(a)(1)(A) (emphases added). *See United States v. Whyte*, 928 F.3d 1317, 1328 (11th Cir. 2019) (explaining that it is a "cardinal rule" of statutory interpretation that courts try to give "effect… to every

13

clause… of a statute") (citation and internal quotation marks omitted)). Even if deterring future violations is conceptualized as one way of correcting a violation, punitive damages are never the "narrow[est]" or "least intrusive" way of effectuating such a correction. As the Supreme Court has explained, "[d]eterrence is… an important purpose of" the tort system created by section 1983, but such deterrence primarily "operates through the mechanism of damages that are compensatory— damages grounded in determinations of plaintiffs' actual losses." *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986) (emphasis in original). Similarly, the Supreme Court has made "clear" that "nominal damages," not punitive damages, "are the appropriate means of 'vindicating' rights whose deprivation has not caused actual, provable injury." *Id.* at 308 n.11. Even assuming punitive damages are also an "appropriate" means of vindicating such rights, they are not less burdensome, more narrowly tailored, or less intrusive than nominal damages.

Although the Eleventh Circuit held in *Hoever v. Marks*, 993 F.3d 1353, 1364 (11th Cir. 2021), that "[42 U.S.C.] §1997e(e) permits claims for punitive damages without a physical injury requirement," it expressly declined to consider whether section 3626 bars punitive damages. *Id.* at 1364 fn. 5. Because the Court did not consider the argument presented here, *Hoever* is not controlling on the issue. Moreover, in *Johnson v. Breeden*, 280 F.3d 1308, 1325-26 (11th Cir. 2002), the Eleventh Circuit interpreted section 3626(a)(1)(A) in a manner that indicates that it

does not bar punitive damages.[5] However, the argument that section 3626 categorically bars punitive damages was not discussed, let alone rejected, in *Johnson*. Therefore, *Johnson* is not dispositive on the issue.[6] *See United States v. Mitchell*, 271 U.S. 9, 14 (1926) ("It is not to be thought that a question not raised by counsel or discussed in the opinion of the court has been decided merely because it existed in the record and might have been raised and considered."); *Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.").

The Circuit Courts apparently have yet to directly address whether punitive damages are barred by section 3626. *See e.g.*, *Hoever*, 993 F.3d at 1364 n.5 ("We decline the government's invitation to address the availability of punitive damages in prison condition cases under 18 U.S.C. § 3626, as it falls outside the scope of the

---

[5] Specifically, the Court stated that section 3626's requirements "mean that a punitive damages award must be no larger than reasonably necessary <u>to deter</u> the kind of violations of the federal right that occurred in the case. They also mean that such awards should be imposed against no more defendants than necessary to serve <u>that deterrent function</u> and that they are the least intrusive way of doing so." 280 F.3d at 1325 (emphases added). It further stated that "[m]any factors may enter into that determination. For example, the number of… violations an individual defendant or institution has had might affect whether punitive damages were necessary, and if so, the amount required <u>to deter</u> future violations." *Id.* (emphasis added).

[6] To the extent that this Court is bound by *Johnson*, the argument that section 3626 bars punitive damages is presented here to preserve the issue for appellate review.

*en banc* briefing question posed to the parties.") (citation omitted); *Al-Amin v. Smith*, 637 F.3d 1192, 1199 n.10 (11th Cir. 2011) ("Since we find that § 1997e(e) prevents Al–Amin, in the absence of physical injury, from offering evidence supporting an award of punitive damages in this action, we need not consider the validity or timeliness of Defendants' alternative argument that 18 U.S.C. § 3626 prohibits punitive damage recovery as well."), *overruled by Hoever*, 993 F.3d at 1363-64; *Vaughn v. Cambria Cnty. Prison*, 709 Fed. Appx. 152, 155 n.2 (3d Cir. 2017) ("The Magistrate Judge stated that punitive damages were unavailable under 18 U.S.C. § 3626(a)(1)(A). … We offer no opinion on this issue at this time, and defer consideration of it in this proceeding because liability has not yet been found.") (citation omitted); *Wilkerson v. Stalder*, 329 F.3d 431, 434 n.3 (5th Cir. 2003) ("The district court chose to defer ruling on the prison officials' claim that the Prison Litigation Reform Act bars the inmates' claim for punitive damages until such time as liability is found. Therefore, this issue is not properly before the court on appeal.") (citation omitted). Because of the apparent absence of Circuit precedent directly addressing this argument, Defendants rely on the plain meaning of the text of section 3626.

Punitive damages are never "necessary to correct the violation of" a Federal right because, "[i]n the strictest sense of the term, something is 'necessary' only if it is essential." *Ayestas v. Davis*, 584 U.S. 28, 44-45 (2018) (citing Webster's Third

New International Dictionary 1510 (1993); 10 Oxford English Dictionary 275–276 (2d ed. 1989)). *See also Necessary*, Black's Law Dictionary (11th ed. 2019) (defining necessary to mean "essential"). And the text and context of section 3626(a) indicate that Congress intended to use the term "necessary" in the strict sense of that word. Unlike the "necessary and proper clause" of Article I, Section 8, for example, section 3626 uses the term "necessary" in the context of a "strict limitation[]," not a broad authorization. *See Johnson*, 280 F.3d at 1323. Similarly, the immediately surrounding text provides that relief is barred unless it is "narrowly drawn," "extends no further than necessary to correct the violation of the Federal right," and is "the least intrusive means necessary to correct the violation of the Federal right. 18 U.S.C. §3626(a)(1).

Punitive damages, however, are not even an appropriate mechanism for "correcting" a legal violation; to the extent that damages serve a "corrective" function, that is what compensatory damages are for. By definition, "compensatory damages" are "[d]amages <u>sufficient</u> in amount to indemnify the injured person for the loss suffered." *Damages*, Black's Law Dictionary (11th ed. 2019) (emphasis added). Accordingly, punitive damages are not even intended to "correct" a legal violation by making the injured party whole; still less are they an "essential" way of making the plaintiff whole.

Consistent with dictionary definitions, caselaw recognizes that punitive damages awards serve two purposes, "punishing unlawful conduct and deterring its repetition." *State Farm Mut. Auto Ins. Co v. Campbell*, 538 U.S. 408, 416 (2003) (quotation omitted). Neither of those purposes makes punitive damages "necessary to correct" a violation of Federal law. By definition, one may "correct" a violation of law without "penalizing" past misconduct or "deterring" potential future violations. Ordinary English usage confirms that proposition. For example, one does not "correct" a future error before it happens; one seeks to deter it—i.e., to prevent it from happening in the first place. Likewise, punishment is not strictly necessary to remedy a wrong; instead, punishment serves other goals, like deterrence or retribution. *Cf. Kokesh v. S.E.C.*, 137 S. Ct. 1635, 1642 (2017) (distinguishing between remedies that are penalties, i.e. those that seek to punish, and those that seek to "compensate[e] a victim for his loss").

Moreover, reading section 3626 to categorically bar punitive damages does not prevent the court from fully remediating ongoing violations. In many civil actions with respect to prison conditions, a plaintiff alleges that his federal rights are being violated on an ongoing basis. In those cases, prospective relief may be warranted—for example, in the form of declaratory or injunctive relief that requires prison officials to "correct" their violation by bringing their conduct into conformity with the law. As this Court has explained, albeit in the context of interpreting section

1997e(e), such relief provides a "reasonably adequate opportunity" to seek redress for constitutional violations," even if prisoners "may not recover monetary damages for such claims." *Al-Amin*, 637 F.3d at 1197 (quotation marks and citation omitted).

What is more, to clear the high bar of the PLRA, relief other than compensatory monetary damages must extend "no further than necessary to correct the violation of the Federal right of [the] particular plaintiff or plaintiffs." 18 U.S.C. §3626(a)(1) (emphasis added). Punitive damages awards aimed at protecting inmates generally (e.g., through deterrence), rather than correcting the violations suffered by the particular plaintiff bringing the suit, are thus prohibited. Moreover, not only must punitive damage awards be plaintiff-specific, they must be defendant-specific. Section 3626(a)(1) requires that they be "narrowly drawn," which means that any deterrent must be aimed at deterring the particular defendant, not the correctional facility or government in general.

Because this Court cannot find that punitive damages are necessary to correct a violation of Plaintiff's rights or are the least intrusive means necessary to do so, punitive damages are barred by section 3626(a)(1)(A). Therefore, Plaintiff's request for punitive damages must be dismissed.

## CONCLUSION

**WHEREFORE**, Defendant respectfully requests that this Court dismiss portions of Plaintiff's Second Amended Complaint consistent with Defendant's Motion to Dismiss.

**ASHLEY MOODY**
**ATTORNEY GENERAL**
Office of the Attorney General
The Capital, PL-01
Tallahassee, Florida 32399-1050
Telephone: (850)414-3300
Facsimile: (850)488-4872

/s Erik Kverne
Erik Kverne
Assistant Attorney General
Florida Bar No. 99829
Erik.Kverne@myfloridalegal.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing *Defendant's Motion to Dismiss Punitive Damages and Count II of Plaintiff's Second Amended Complaint* was e-filed and served electronically on Plaintiff's counsel of record through CM/ECF on October 2, 2024.

/s Erik Kverne
Erik Kverne
Assistant Attorney General
Florida Bar No. 99829

## <u>CERTIFICATE OF COMPLIANCE WITH WORD LIMIT</u>

**I HEREBY CERTIFY** that the above Motion and Supporting Memoranda required by N.D. Fla. Loc. R. 7.1(E) contains **4,713** words, not exceeding 8,000 total word maximum created by N.D. Fla. Loc. R. 7.1(F).

<u>/s/ Erik Kverne</u>
Erik Kverne
Assistant Attorney General
Florida Bar No. 99829