# Exhibit KK

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PANAMA DIVISION**

**DEVON CURRIE**
**DC# A51859**

      **Plaintiff,**

**v.**                                      **Case No.:  5:23-CV-183-TKW-MJF**

**SGT. MCKINNIE, et al.,**

      **Defendants.**
_____/

## DECLARATION OF DELISIA GREEN

      I, Delisha Green, pursuant to 28 U.S.C. §1746 and § 92.525, Fla. Stat., make this declaration under penalty of perjury and declare that the statements made below are true and state:

1. I am Delisia Green a former Correctional Officer employed by the Florida Department of Corrections ("FDC"), at Apalachee Correctional Institution. I have since left FDC on my own and no longer work for the Department.

2. Recently, I was served with a copy of the Second Amended Complaint ("the Complaint") in the above-captioned case, and as I am named as a defendant in the case. Based on my review of the Complaint, my recollection of the events is as follows:

3. I was the only Correctional Officer assigned to the officer's station of P-Dorm the day of the incident. My Sergeant at the time was Antoinette Patterson ("Patterson"). Both Patterson and I were tasked with the responsibilities of maintaining security of P-Dorm and when necessary, conducting Master Roster Count.

1

4. On the date of the incident, July 20, 2022, I remember that there was a significant incident involving multiple gangs attacking one another with weapons while Master Roster Count was ongoing. The Complaint alleges that a fist fight occurred before Master Roster Count and the incident involving weapons; however, I did not observe any fight before Master Roster Count or the incident involving weapons. Further, while conducting Master Roster Count, I did not observe any inmate in distress or in any way injured. Nor did any inmate approach me about leaving the dorm or requesting to be placed in Protective Management.

5. Instead, while I was conducting Master Roster Count, I did observe that P-2 was being very disruptive. Based on P-2 being so disruptive, I radioed command and indicated that the institution should be on standby because of a potential problem that I perceived may occur. During this time, I do not remember Patterson being me in the Office Station. I remember calling her to come and assist me with count at around the same time as I radioed command. After radioing command, I conducted count in P-2 and began to conduct count in P-1.

6. However, shortly after finishing count in P-2, the incident began with multiple inmates utilizing weapons and stabbing one another. Based on my observing the behavior, I initiated the Incident Command System ("ICS") to report the fight and request assistance. I also reported to staff what was going on in the fight to provide up-to-date information to best prepare responding staff for the future entry into the wing. Based on my initiation of ICS, additional support was able to respond to the incident and prevent further altercation after their arrival.

7. During the incident involving weapons, I could not physically intervene to stop the incident. To physically intervene I would have had to leave the Officer Station and pass through at least a single door, which must remain closed and locked, to enter the wing. Leaving the Office Station would have not only taken time, but broke protocol and procedure because the Officer's Station must always house an officer as the station controls the opening and closing of doors, and it would not be possible to open any doors to allow for further staff assistance.

8. Additionally, officers are trained to not physically intervene in a situation like the one that occurred on July 20, 2022, until sufficient staff are present. If I were to go into the situation alone, there was a high risk of harm to me. I do not have access to weapons or any type of body armor or defensive items with which to protect myself. I would have only been assigned a single small can of pepper spray on my hip and a body alarm which would have been of no use and possibly caused confusion about the incident. If I activated my body alarm, there is the likelihood that responding staff would have believed I was in trouble in the Officer Station, rather than the incident occurring on the wing and the response may have been different.

9. Further, I do not remember Patterson being present during the start of the fight, and believe I was alone. However, if Patterson was present at the start of the fight, she likewise could not enter the wing without sufficient staff present. In such a scenario was her being present, I would have to remain in the Officer Station, and she would have to remain with me until sufficient staff arrived as otherwise, she would be entering the wing and putting herself at a high risk of harm as described previously. At most, during the start of the incident, only myself and Patterson were present, but I do not remember whether Patterson was present at the beginning of the incident or responded shortly thereafter.

10. In reviewing the Complaint, allegations are made that Sergeant Michelle McKinnie ("McKinnie") was present during the first fight and the incident. The allegation is inaccurate. On July 20, 2022, McKinnie was working elsewhere as Patterson, and I were tasked with overseeing P-Dorm. McKinnie was not present during either incident described in the Complaint.

11. However, McKinnie did eventually arrive at P-Dorm. McKinnie's arrival at P-Dorm was *after* the incident involving the weapons. Upon arriving at P-Dorm, McKinnie did assist with count as the institution was still in the process of completing count when the incident began. The incident forced count to pause until security was restored.

12. The allegation in the Complaint that McKinnie was present during the incident is likely a misidentification of Patterson. Both McKinnie and Patterson both have similar hair styles, are about the same height, are both female, and both have similar body shapes. McKinnie also often worked in P-Dorm. I believe

3

that the Complaint misidentifies McKinnie as being present and mistakes McKinnie for Patterson due to how similar both look and the fact that McKinnie sometimes worked in P-Dorm. At no point prior to the conclusion of the incident involving weapons was McKinnie present as she only arrived *after* the conclusion of the second incident.

13. The foregoing facts are known to me to be true and correct based upon my review of the records. I am over the age of 18, am competent to testify to such facts, and would so testify if I appeared in court as a witness at a trial regarding this matter. I declare under penalties of perjury that I have read the foregoing, and I confirm that the facts stated herein are true and correct.

*Delisia Green*                                                                                    01/13/2025

**Delisia Green**                                                                               **Date**
**Declarant**

4