UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

DEVON CURRIE,

    Plaintiff,

vs.

SGT. McKINNIE et al.,

    Defendants.

Case No. 5:23-cv-00183-TKW/MJF

NOTICE OF FILING SUPPLEMENT IN RESPONSE
TO MOTION FOR SUMMARY JUDGMENT

Notice is hereby given that Plaintiff Currie hereby files the attached Verified Declaration in substitution for his unverified Declaration (ECF 90-4) filed with his Response to Defendant McKinnie's Motion for Summary Judgment.

Respectfully Submitted,

*s/James V. Cook*
JAMES V. COOK, ESQ.
Florida Bar Number 966843
Law Office of James Cook
314 West Jefferson Street
Tallahassee, FL 32301
(850) 222-8080; 561-0836 fax
cookjv@gmail.com

Attorney for Plaintiff

I CERTIFY a true copy hereof was filed and served by CM/ECF on 2/3/25.

*s/James V. Cook*

1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

DEVON CURRIE,

    Plaintiff,

vs.

MICHELLE MCKINNIE, *et al.*

    Defendants.

Case No. 5:23-cv-00183-TKW/MJF

## DECLARATION OF DEVON CURRIE

I, Devon Currie, pursuant to 28 U.S.C. § 1746, state as follows:

1. I would make the following corrections and clarifications.

2. I did not commit to my identification of Sgt. McKinnie and Officer Delisia Green until I was able to see their photographs to place a face with a name.

3. Officers often wear their name badges upside down or backwards or not at all and so it is not uncommon for inmates not to know the proper names of officers.

4. There are always two officers doing Master Roster Count. One is usually a sergeant. One stands in one place and watches everyone. The other goes from bunk to bunk matching faces with photos on the Inmate Roster.

5. The officer who said "I'm busy; I aint doing no paperwork" was the first officer to come out of the officer's station; the other one stood inside the wing at the doorway of the Officer's Station.

6. At this point, I have reviewed staff photographs of Sgt. Michelle McKinnie

and Officer Delisia Green and Sgt. Antoinette Patterson and confidently state that during the first count McKinnie was standing in front of the Officer's Station door and Green was walking through the Dorm matching inmate's faces with the roster photo. I do not recall seeing Sgt Patterson in the wing.

7. At this point I can confidently state that it was Green who I begged for protection as she came past my bunk during Master Roster count and that is the person who said she didn't have time for paperwork and walked away.

8. Both Sgt. McKinnie and Officer Green would have seen my bloody injured state and heard me ask for protection and heard the gang members threaten me if I was not allowed to "check in," that is, to seek protection.

9. The shouted threats were loud enough to be heard and understood inside the officer's station; I know that because we communicate back and forth with officers inside the officers' station on a regular basis. From long experience, we know how loud we have to yell to get their attention and those threats were very loud.

10. The threats by the Latin Kings were aimed at the gay inmates in the Dorm but they were also aimed at the officers because they knew we needed their cooperation to actually leave the Dorm, which was the Latin Kings goal.

11. Any officer inside the Officer's Station would have been able to hear the repeated threats of violence that were being shouted during the Master Count process and would have seen the attack that followed the end of Master Roster Count. Judging by the time it took for the Rapid Response Team to arrive, no one immediately called back up.

FURTHER, AFFIANT SAITH NOT.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____ at _____, Florida.

_Devon Currie_  1-16-2025
SIGNED