UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

DEVON CURRIE,

    Plaintiff,

vs.

MICHELLE MCKINNIE, *et al*.

    Defendants.

Case No. 5:23-cv-00183-TKW/MJF

**RESPONSE TO DEFENDANT GREEN'S SECOND MOTION
(Doc. 106) TO DISMISS COUNT II OF PLAINTIFF'S
SECOND AMENDED COMPLAINT (Doc. 52)**

Plaintiff DEVON CURRIE, through counsel, files this Response in Opposition to Defendant Green's Second Motion to Dismiss Count II of Plaintiff's Second Amended Complaint (Doc. 58) and would show that Plaintiff has properly exhausted his administrative remedies under 42 U.S.C. 1997e, regarding Defendant Green's deliberate indifference to his medical needs.

**BACKGROUND**

On July 10, 2023, Plaintiff initiated this action *pro se*, knowing only that a Sgt. McKinney (later shown to be McKinnie) and one other officer, whose name was unknown at the time, referred to as "Jane Doe," refused to provide help after he had been brutally attacked by multiple gang members and, with his face and clothing covered with blood, appealed to the two corrections officials to be allowed

1

to "check in" (make a formal application for protection) from members of the Latin Kings prison gang who had already attacked him with mop and broom handles and were loudly demanding that all gay inmates leave the Dorm. (ECF 52 at ¶¶ 16, 27)

On September 19, 2023, the Court noted that Plaintiff had not identified "Jane Doe's" age or race or any other identifying factor that would distinguish her from other officers at Apalachee Correctional Institution and ordered Plaintiff to choose whether to dismiss his claim or file an amended complaint naming the Defendant corrections officials in the pleading. On October 3, 2023, Plaintiff did file an amended complaint in which he identified "Jane Doe" as an African-American female about 22-35 years of age, about 5-6 tall with short dreads.

On June 7, 2024, undersigned attorney, James Cook, filed a Notice of Appearance as lead counsel and attorney Joshua Tarjan also appeared. The attorneys were able to discover that the name of the corrections officer assigned to Plaintiff's Dorm was Delisia Green. On September 20, The Court granted Plaintiff permission to file a Second Amended Complaint (SAC) naming "Jane Doe" as "Delisia Green." Green and a second corrections official, Antoinette Patterson, had both left the employment of the Florida Department of Corrections but Green was eventually found and served.

On October 2, 2024, Defendant McKinnie filed a Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 52), part of which is pending, and

has also filed a Motion for Summary Judgment (Doc. 78). On February 6, 2025, Defendant Green filed a Motion to Dismiss Punitive Damages and Count II of the Second Amended Complaint, (Doc. 103), which the Court struck the same day (Doc. 104) for failure to comply with the Court's order. Now Defendant Green has filed her Second Motion to Dismiss Count II of the Second Amended Complaint, charging deliberate indifference to a known risk of harm from a serious medical condition. Specifically, Defendant Green maintains that Plaintiff failed to exhaust his administrative remedies as to that cause of action.

## MEMORANDUM OF LAW

The Eleventh Circuit applies a "two-pronged approach" in evaluating motions to dismiss: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) at 1290 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). This approach applies to all Rule 8(a) pleadings—no heightened pleading standard exists for civil right or municipal liability claims. *See Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993).

**I.    Plaintiff exhausted his administrative remedies under 42 U.S.C. 1997e, regarding the Defendant's deliberate indifference to his medical needs.**

Defendant Green ("Defendant") has moved to dismiss Plaintiff's Count II,

charging deliberate indifference to Plaintiff's medical needs due to a gang attack. McKinnie and Green were in Plaintiff's dorm doing Master Roster Count when Currie, with torn clothing and bleeding gashes on his face, appealed for help to escape a Latin Kings gang assault on the basis of his sexual orientation, demanding that he get out of the Dorm. (Doc. 52 at ¶ 33). Green, out in the Dorm, is alleged to have responded, "I ain't doing no paperwork" and moved on, leaving Plaintiff to the mercy of the Latin Kings, with gang members still yelling threats and Sgt. McKinnie looking on. (*Id*. at ¶¶ 32, 35, 36).

Plaintiff was clearly in a pitiable state as he emerged from the first round of the gang attack, "his clothing ripped and covered with blood and with bleeding gashes on his face and head, clearly visible to the Defendants." (*Id*. at ¶ 26).

To argue Plaintiff failed to properly exhaust his remedies as to deliberate indifference to his need for "medical help" during a gang attack, Defendant goes outside the four corners of the operative complaint, citing an appeal to the Secretary of the Florida Department of Corrections (FDC) from denial of a formal grievance affirming the denial of informal grievance, all of which Plaintiff attached to his initial *pro se* complaint. This appeal was denied on the merits by the Secretary's designee, finally exhausting the grievance process. (Doc. 1 at 10-15).

In the informal grievance, Plaintiff complains that officers present during the attack failed to "help me or diffuse the situation in any way . . . or at least

minimized the damage." (*Id*. at 10). The informal grievance was denied stating that "Security staff were interviewed . . . and proper actions were taken." (*Id*.). The formal grievance had words cut off but appears to say that the officers "knowing I was in grave [dang]er . . . never once attempted to help me." (*Id*. at 12). The formal response was that the response to the informal grievance "is found to adequately address this issue." (*Id*. at 11). In his appeal from denial of the formal grievance, Plaintiff writes, "I attempted to get help from one of the officers closest to me, telling her I needed to leave the dorm. My life was in danger. She didn't even look my way, only stating, 'I'm busy.'" (*Id*. at 14). The Secretary's designee responded, "The response that you received at the institutional level has been reviewed and is found to appropriately address the concerns that you raised at the institutional level as well as the Central Office level." (*Id*. at 13).

Thus, the grievance appears to be that the officers failed to provide <u>any kind of help</u> whatsoever and showed no concern for his welfare. It does appear that some investigation was done as a result of his grievances since a Captain told Plaintiff that he watched the dorm video "from start to finish." (*Id*. at 15).

Logically, either calling back-up or calling medical would have interrupted the gang activities and avoided a second wave attack, a series of stab wounds and a punctured lung. It is undisputed that neither McKinnie nor Green made any effort to help Currie get help for his clearly obvious medical injuries or take any other

5

action to avoid the second wave Latin Kings knife attack.

Moreover, Florida Administrative Code ("F.A.C.") rule 33-208.002(24) (effective 6/3/21) mandates: "Every [Fl. Dept. of Corr.] employee has the responsibility to protect and *safeguard* […] the person and property of inmates […]. (Emphasis added.) And "[p]rior to placing the inmate in administrative confinement, the inmate shall be given a pre-confinement health assessment, including a physical and mental health evaluation that shall be documented in the inmate's health care record." F.A.C. 33-602.220(2)(b) (effective 6/1/21). Here, the act of "checking in"—seeking protection under administrative confinement—would have mandated a pre-confinement health assessment, which would have led to observation of—and in turn treatment of—Plaintiff's injuries. Plaintiff's begging for help inherently encompassed medical evaluation and treatment.

Defendant argues that (although the facts underlying the cause of action had been pled), the explicit cause of action for failure to provide access to medical care had not been articulated prior to the operative complaint (Doc. 52, Second Amended Complaint). Defendant acknowledges that a plaintiff has a duty to present "well-pleaded factual allegations" that "give rise to an entitlement to relief." (Doc. 58 at 2-3). Defendant acknowledges that it is the underlying facts and not the legal conclusions from those facts that the Court requires from a plaintiff. There is no provision in Rule 8, Federal Rules of Civil Procedure that requires the

6

naming of a particular legal theory or cause of action that might be justified by the underlying facts. (*Id*. at 3). Although Plaintiff's appeal to the corrections officials was predominantly, "get me out of here," there is virtually no scenario in which the bleeding gashes in his face from the initial attack would not have received care.

Defendant goes on to argue that because Plaintiff did not explicitly grieve that he was deprived of *medical* care when he begged, in torn bloody clothing, for help in the face of Latin Kings gang assaults which had already dealt him serious facial wounds, Plaintiff did not properly exhaust the grievance process as required by the Prison Litigation Reform Act. (*Id*.). That argument would make the demands of the grievance process more restrictive than the federal rules of pleading, and would effectively convert the requirements of exhaustion of the grievance process into a 15-day statute of limitations.

In *Chestnut v. Williams*, 3:22-cv-1349-BJD-LLL, (M.D. Fla. Jan. 18, 2024), the court found that a prisoner was not required to "mention discrete potential civil rights claims in a grievance to properly exhaust his administrative remedies so long as he affords the agency a 'full and fair opportunity' to address his issue on the merits." *Id*. at *10. See *Jones v. Bock*, 549 U.S. 199, 217 (2007); See also *Maldonado v. Unnamed Defendant*, 648 Fed.Appx. 939, 953 (11th Cir. 2016) ("The exhaustion requirement, allowing prison officials to address complaints in the first instance, is satisfied as long as the inmate's grievance provides sufficient

7

detail to allow prison officials to investigate the alleged incident.").

"[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). Nothing in the FDOC's grievance procedures requires inmates to file new grievances addressing every subsequent act by a prison official that contributes to the continuation of a problem already raised in an earlier grievance. The only FDOC requirements regarding the contents of grievances are that they must accurately state the facts and "address only one issue or complaint." Fla. Admin. Code Ann. rr. 33-103.006(2)(e) and (2)(f). *Parzyck v. Prison Health Services, Inc.*, 627 F.3d 1215, 1219 (11th Cir. 2010). Rather, exhaustion "merely requires inmates to complete the administrative review process in compliance with the prison's grievance procedures, so that there is time and opportunity to address complaints internally before allowing the initiation of a federal case." *McIlwain v. Burnside*, 2021 WL 4256827 (M.D. Ga. 2021), *report and recommendation adopted*, 2021 WL 3634122 (M.D. Ga. Aug. 17, 2021) (internal quote marks removed).

"Where a prison's grievance procedure does not require a certain level of specificity, 'a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.'" *Hamze v. Singletary,* 2024 WL 4252554 (M.D. Fla. Sept. 20, 2024). Here, the agency had every opportunity to investigate the events of July 20, 2022, through interviews and review of the video recordings.

Defendants do not explain how any of the policies underlying the Florida Department of Corrections grievance policy, as summarized by *Alexander v. Hawk*, 159 F. 3d 1321, 1323 (11th Cir.1998), are undermined by the failure of Plaintiff to articulate a legal theory of a constitutional violation underlying the essential facts in the grievance, much less why grievance requirements should be more stringent than federal pleading rules.

If, in fact, Plaintiff had not perfectly spelled out the scope of the constitutional abuse but the grievance reviewing authority nevertheless treated the grievance on the merits, the grievance review authority has the power to waive the deficiency. "[A] prison waives its procedural objections to considering the merits of a grievance, and therefore waives its exhaustion defense, if it does not explicitly rely on the grievance's procedural shortcomings as an adequate and independent ground for denying the grievance at the administrative level." *Whatley v. Smith*, 898 F.3d 1072, 1084 (11th Cir. 2018). "District courts may not enforce a prison's procedural rule to find a lack of exhaustion after the prison itself declined to enforce the rule." *Whatley v. Smith*, 898 F.3d 1072 (11th Cir. 2018).

The role that the grievance process plays in the continuum of processes that may ultimately lead to litigation may save judicial labor when properly handled but it does not preempt the remedial purposes of 42 U.S.C. § 1983. The role of the grievance process to put the agency on notice of the essential facts so that it can

9

investigate and correct constitutional deficiencies and avoid unnecessary litigation does not put the state agency or its officials in the driver's seat.

## II.    Conclusion

Plaintiff' moves this Honorable Court to DENY Defendant's Motion (Doc. 106) To Dismiss Count II of Plaintiff's Second Amended Complaint (Doc. 52).

Respectfully submitted,

*s/James V. Cook*
James V. Cook, Esq., FBN 0966853
Law Office of James Cook
314 West Jefferson Street
Tallahassee, Florida 32301
(850) 222-8080; 850 561-0836 fax
cookjv@gmail.com

*/s/ Joshua Tarjan*
Joshua Tarjan (FBN 107092)
The Tarjan Law Firm P.A.
12372 SW 82 Avenue
Pinecrest, FL 33156
(305) 423-8747; (786) 842-4430 (fax)
josh@tarjanlawfirm.com

*Attorneys for Plaintiff*

Pursuant to Local Rule 7.1(F), I hereby certify that the foregoing document contains [2189] words, inclusive of headings, footnotes, and quotations, but exclusive of the case style, signature block and certificates.

I CERTIFY the foregoing was filed electronically on 2/20/25 and served on all counsel registered with the CM/ECF electronic mail system:

*/s/James V. Cook*
