**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**

**DEVON CURRIE
DOC# A51859,**

      **Plaintiff,**

**v.**                        **Case No.: 5:23-cv-183-TKW/MJF**

**MCKINNIE, ET AL.,**

      **Defendants.**

_____/

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**Green** ("Defendant"), through counsel, hereby move for Summary Judgment in her favor pursuant to Rule 56, Fed. R. Civ. P., and Rule 56.1, N.D. Fla. Loc. R., and alleges the following in support thereof:

## STATEMENT OF MATERIAL FACTS

Defendant restates and re-alleges the summary of Plaintiff's claims and Statement of Undisputed Material Facts contained within Defendant McKinnie's Motion for Summary Judgment. (Doc. 78 at 1-10).[1]

_____

[1] Each document filed in this case as part of the Electronic Case File will be referenced as "Doc." followed by the document number.

## MEMORANDUM OF LAW

Summary Judgment is proper if the pleadings and sworn statements show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corporation v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for Summary Judgment bears the initial burden of demonstrating an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 322-23. Upon meeting this burden, the burden shifts to the nonmoving party to present evidentiary material demonstrating that a genuine issue of material fact exists. *Id*.

Applicable substantive law identifies those facts that are "material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Factual issues must have a real basis in the record to be considered genuine and the nonmoving party must show more than a "metaphysical doubt" regarding the material facts. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The evidence and reasonable inferences drawn from the evidence are viewed in the light most favorable to the nonmoving party. *Watkins v. Ford Motor Co.*, 190 F.3d 1213, 1216 (11th Cir. 1999).

Although all reasonable inferences are made in favor of the nonmoving party, a court need not permit a case to go to a jury when the inferences drawn from the evidence and upon which the nonmoving party relies are 'implausible.'

*Cuesta v. School Bd. of Miami-Dade County*, 285 F.3d 962, 970 (11th Cir. 2002) (citations omitted). A mere "scintilla" of evidence in support of the nonmoving party's position is not sufficient; there must be evidence upon which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 252. *See also Matsushita*, 475 U.S. at 587 (there is no genuine issue for trial if record taken as a whole would not lead a rational trier of fact to find in favor of non-moving party). In other words, Summary Judgment is warranted against a nonmoving party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

To create an issue of fact for trial sufficient to defeat a well-supported Summary Judgment motion, the non-movant's evidentiary material must consist of more than conclusory, uncorroborated allegations from an affidavit. *West v. Higgins*, 346 F. App'x 423, 425 (11th Cir. 2009) (per curiam) (unreported op.) (citing *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990)). Further, if "two parties tell different stories [where one] is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). If a fact cannot be presented in a form that would be admissible in evidence, it cannot be used for purposes of Summary

Judgment. *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999). *See also* Rule 56(c), Fed. R. Civ. P.

In *McMillian v. Johnson*, 88 F.3d 1573, 1584 (11th Cir. 1996), the Eleventh Circuit clarified its earlier rulings on this point by indicating that their cases applying *Celotex* read *Celotex* "as simply allowing *otherwise admissible evidence* to be submitted in inadmissible form at the summary judgment stage, though at trial it must be submitted in admissible form." The Court continues to apply this principle. *See McCaskill v. Ray*, 279 Fed. App'x. 913, 914 (11th Cir. 2008). However, the court was clear that "potential impeachment evidence [although admissible] . . . may not be used to create a genuine issue of material fact for trial" that would defeat a Motion for Summary Judgment. *McMillian*, 88 F.3d at 1584.

## I.    Plaintiff fails to state a claim based on a theory that Defendant failed to Protect Plaintiff or intervene on his behalf.

The 8th Amendment requires prison officials to "take reasonable measures to guarantee the safety of the inmates," *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), but the requirement does not make officials "guarantor[s] of [prisoners'] safety." *Purcell ex rel. Est. of Morgan v. Toombs Cnty., Ga.*, 400 F.3d 1313, 1321 (11th Cir. 2005). As a result, prison officials are not constitutionally liable for every inmate-on-inmate attack. *Farmer*, 511 U.S. at 832. To state a cause of action for failure to protect, Plaintiff must demonstrate three elements: (1) Plaintiff must show that he was "incarcerated under conditions posing a substantial risk of

serious harm;" (2) that Defendant "'[had] a sufficiently cuplable statement of mind,' amounting to 'deliberate indifference;'" and (3) that the constitutional violation caused Plaintiff's injuries.[2] *Cox v. Nobles*, 15 F. 4th 1350, 1357-58 (11th Cir. 2021).

"Deliberate indifferent exists when a prison official 'knows of and disregards an excessive risk to inmate health or safety.'" *Cox*, 15 F. 4th at 1358 (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Recently, the 11th Circuit made clear, *en banc*, that the standard for deliberate indifference brought under the 8th Amendment is as follows:

> For reasons we'll explain, we now hold, in accordance with the Supreme Court's decision in *Farmer v. Brennan*, that in addition to an "objectively serious" deprivation, a deliberate-indifference plaintiff must show that the defendant acted with "subjective recklessness as used in criminal law," and that in order to do so, the plaintiff must demonstrate that the defendant actually knew that his conduct – his own actions or omissions – put the plaintiff at substantial risk of serious harm. We add the caveat, likewise prescribed by *Farmer*, that even if defendant "actually knew of a substantial risk to inmate health or safety," he cannot be found liable under the Cruel and Unusual Punishments Clause if he "responded reasonably to th[at] risk."

*Wade v. McDade*, 106 F.4th 1251, 1253 (11th Cir. 2024) (internal citations removed). *See also Farmer v. Brennan*, 511 U.S. 825, 839 (1994). *See also Terry*

---

[2] For purposes of this Motion only, Defendant does not contest that Plaintiff was injured and that if a constitutional violation exists, the injury was contributed to by the violation.

*v. Baily*, 376 Fed. App'x 894, 895-96 (11th Cir. 2010) (analyzing a failure to protect claim in the context of an inmate-on-inmate attack between cellmates). The 11th Circuit has "been at pains to emphasize that 'the deliberate indifferent standard . . . is far more onerous than normal tort-based standards of conduct sounding in negligence,' and is in fact akin to 'subjective recklessness as used in the criminal law.'" *Hoffer v. Secretary, Florida Department of Corrections*, 973 F. 3d 1263, 1271 (11th Cir. 2020).

A generalized risk of harm does not satisfy the subjective element of a deliberate indifferent claim, and instead the substantial risk must be known, and an inference must be drawn by the individual which demonstrates an understanding of the substantial risk. *Cox*, 15 F.4th at 1358-60. A prison official cannot be held liable under the Eighth Amendment for not appreciating that a prisoner faced a substantial risk of serious harm, even if "the risk was obvious and a reasonable prison official would have notices." *Farmer*, 511 U.S. at 842 ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment.").

To establish an 8th Amendment violation, a prisoner must point to evidence permitting the reasonable inference that the defendant was deliberately indifferent to conditions that were "sufficiently serious." *See Chandler v. Crosby*, 379 F.3d

1278, 1288 (11th Cir. 2004). Conditions of confinement are "sufficiently serious" only if they are so extreme that they expose the prisoner to "an unreasonable risk of serious damage to his future health or safety." *Id.* at 1289 (internal quotation marks omitted). "Showing substantial risk of serious harm requires the prisoner to provide evidence that there was a 'strong likelihood' of his injury occurring." *Visage v. Woodall*, 798 F. App'x 406, 408 (11th Cir. 2020) (citing *Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015)). A court's consideration of whether there was a strong likelihood, as opposed to a "mere possibility," of an injury occurring cannot be based on "hindsight bias." *Brooks*, 800 F.3d at 1301. Moreover, isolated incidents do not satisfy the "substantial risk" standard articulated in *Farmer. See e.g.*, *Purcell*, 400 F.3d at 1320 ("[O]ccasional, isolatd attacks by one prisoner on another may not be constitute cruel and unusual punishment, [but] confinement in a prison where violence and terror reign is actionable."). *See also Lakin v. Barnhart*, 758 F.3d 66, 70-72 (1st Cir. 2014) (Souter, J., sitting by designation) (explaining that the risk must be "substantial," not isolated or infrequent, and affirming summary judgment in defendants' favor where plaintiff's evidence did not reach the "substantial" threshold required by *Farmer* as "not every risk carries an inherent threat at a substantial level.").

As a result, a prisoner cannot survive summary judgment based solely on evidence of past isolated incidents or his own injury. *Visage*, 798 F. App'x at 408.

Rather, the prisoner must demonstrate that the complained-of condition – most commonly inmate-on-inmate violence – resulted in so many incidents or injuries that such incidents or injuries were "the norm or something close to it." *Marbury v. Warden*, 936 F.3d 1227, 1234 (11th Cir. 2019) (quoting *Purcell*, 400 F.3d at 1322)).

As it relates to an officer's failure to intervene, the law is clear that "[p]rison correctional officers may be held directly liable under § 1983 if they fail or refuse to intervene when a constitutional violation occurs in their presence." *Terry*, 376 Fed. App'x at 896 (citing *Ensly v. Soper*, 142 F. 3d 1402, 1407 (11th Cir. 1998)). "[A]n officer who is present at the scene and who fails to take reasonable steps to protect the victim . . . can be held personally liable for his nonfeasance." *Skritch v. Thornton*, 280 F3d 1295, 1301 (11th Cir. 2002).

A. Plaintiff fails to demonstrate the Objective Element in relation to his claims.

In attempting to demonstrate the required objective component of his claim, Plaintiff relies on officer training to be "observant," (Doc. 52 at ⁋ 19), an alleged "sub-culture" among officers, *Id.* at ⁋⁋ 21-23, and inadmissible hearsay "threats," *Id.* at ⁋⁋ 39-41, 62-63. Recently, Plaintiff has suggested that Plaintiff's housing with dangerous individuals also demonstrated an objective risk of serious harm. (Doc. 92 at 23). Plaintiff also relied on his alleged physical condition after the first

fight. (Doc. 92 at 23-24). None of the unsupported statements satisfy the objective requirement of a deliberate indifference claim.

First, Plaintiff's allegation that officers are trained to be "observant" is not supported by a single piece of evidence. There is no evidence that officers are required to be any more observant than any other individual or are provided with specialized training to heighten an officer's observation skills. Officers are not superheroes; they are normal humans. Even if such training did exist, there is no evidence that Defendant underwent such training.

Even more problematic for Plaintiff's assertion related to the observation skills of officers in general is when the incident occurred. The incident occurred during master roster count, which is a period when officers are **required** to count all inmates to ensure that everyone is accounted for. (Doc. 78-2 at 40-41; 78-28 at 88). During this time, officers are going to be focused on the count and ensuring its correct and may inadvertently overlook actions taken by inmates.

Second, there is not a single piece of evidence in this case that the alleged "subculture" described by Plaintiff exists. Even more problematic is the fact that there is also a dearth of evidence demonstrating that Defendant was a part of the described "subculture." Plaintiff's "subculture" assertion is entirely and completely speculative and unsupported by a single piece of evidence.

Third, the reliance on the hearsay statements[3] should not be a basis for demonstrating the required objective component. If a fact cannot be presented in a form that would be admissible in evidence, it cannot be used for purposes of Summary Judgment. *Macuba*, 193 F.3d at 1322. *See also* Rule 56(c), Fed. R. Civ. P. The statements Plaintiff alleges occurred are not identified as being made by any person, and instead only came from the alleged "predatory inmates." (Doc. 52 at ¶¶ 39-41, 62-63). No inmate deposed has offered up the statements as being his own, and Plaintiff has not identified who made the statements. The statements are inadmissible hearsay that cannot be reduced to admissible evidence and should not be relied upon. As the statements are not admissible as evidence, the statements cannot be utilized to demonstrate that Defendant heard them or was aware of the content, as Plaintiff alleges. *See Id.* at ¶¶ 62-63, 66.

Plaintiff's reliance upon the "the loud, repeated, aggressive verbal threats by Latin Kings to Mr. Currie to 'check in'" likewise does not demonstrate an objective risk of harm. The statements made by Plaintiff are hearsay and are not admissible. *See* (Doc. 101 at 5). However, even if the statements are considered, statements indicating that Mr. Currie needed to "check-in" do not demonstrate that Plaintiff was at a substantial risk of harm. The statements do not demonstrate a

---

[3] Defendant McKinney has already objected to the described statements. *See* (Doc. 101).

level of "extreme" conditions that would lead to a violation of the Eighth Amendment. *Chandler*, 379 F.3d 1289.

As it relates to the danger level of his fellow inmates, Plaintiff essentially argues that prisons house dangerous individuals,[4] and as a result, a substantial risk exists. *See* (Doc. 92 at 23). In reliance on his position, Plaintiff cites to *Nelson v. Tompkins*, 89 F. 4th 1289, 1306 (11th Cir. 2024) and describes the prison sentences of several individuals in the dorm – two of which, Chad Shaw and Michael Marceau, were not even involved.

In reviewing the citation relied upon by Plaintiff, the citation refers to a concurring opinion authored by Judge Carnes which does include the string cite provided by Plaintiff. *See Nelson*, 89 F. 4th at 1306. However, reading the **next two paragraphs** in the concurrence demonstrates that Plaintiff's position is entirely without merit. *Nelson*, 89 F. 4th at 1307 ("Given all of those decisions, our circuit law does not suggest, let alone establish, that any time an inmate assaults another inmate . . . some prison official in some way violated the Constitution. . . . Despite what the other concurrence suggests, victims of assault in jail are not entitled to 'heightened protections.'"). *See also Chandler v. Crosby*, 379 F.3d

---

[4] Tellingly, when making this argument, Plaintiff does not even mention himself. Plaintiff is serving two life sentences for Burglary with an assault and Robbery with a gun or deadly weapon, (Doc. 78-1), after being convicted by a jury on all counts. *See* (Doc. 100-1). Based on Plaintiff's convictions, he fits right in with the other referenced individuals in the dorm.

1278, 1289 (11th Cir. 2004) (determining that a challenged condition must be "extreme."). The case relied upon by Plaintiff does not demonstrate that because prisons house dangerous individuals, a substantial risk necessarily exists.

The only fact that is worth consideration is the allegation from Plaintiff that he was bleeding after having just been in a fight. *See* (Doc. 92 at 23-24). However, the fact that Plaintiff was bleeding does not, in and of itself, demonstrate a substantial risk of harm, especially considering that Plaintiff was unconcerned with going to medical. *See* (Doc. 78-2 at 43-45). Plaintiff's injuries did not demonstrate a substantial risk of harm.

B. Plaintiff cannot demonstrate the Subjective element as it relates to the first fight and Defendant did not fail to intervene on Plaintiff's behalf.

Also required for Plaintiff to prove is the subjective component of his claim against Defendant. Plaintiff fails to demonstrate this required element of his claim as well. To be successful, Plaintiff must demonstrate that Defendant's actions demonstrate a state of mind amounting to criminal recklessness. *Farmer*, 511 U.S. at 839; *Wade*, 106 F.4th at 1253. More specifically, Plaintiff "must demonstrate that the defendant actually knew that [her] conduct – [her] own actions or omissions – put the plaintiff at substantial risk of serious harm." *Wade*, 106 F.4th at 1253. There is no evidence which demonstrates a mind-set of criminal recklessness on the part of Defendant.

Prior to the first fight, there was no knowledge, on behalf of Defendant, that Plaintiff would be involved in an altercation. As alleged by Plaintiff, and confirmed by several other witnesses, the fight began spontaneously while he was attempting to shower in the bird bath area. (Doc. 78-2 at 15-16). *See also* (Doc. 52 at ⁋ 16). There was no indication that Plaintiff would be attacked by any inmate, or any fight would occur.

Additionally, the first fight occurred within the bird bath area of the bathroom in P-2. The bird bath area is on the far-left side of the bathroom along the left wall of the dorm and consists of a row of sinks. Photos taken from inside of the Officer Station demonstrate that there is a row of bunk beds which almost completely obstruct the bird bath area. *See* (Docs. 78-4; 78-8 – 78-10). If any inmates were on the top bunks of the bunk beds, the bird bath area would be completely obstructed. Furthermore, if there are several – presumably up to 4 inmates in this case – in the bird bath area, the ability to see what is going on in the area would be completely obstructed. Most importantly, Defendant did not see the first fight occur. (Doc. 89-1 at ⁋ 4); (Exhibit A at 67-68). It is not plausible to say that the officers in the Officer Station would have seen the first fight.

Additionally, due to how far away the Officer Station is from the bird bath area, Defendant could not hear what was being said in the bird bath area. Defendant McKinney testified that conversations in the area could not be heard

from the Officer Station. (Doc. 78-28 at 41). Defendant Green also indicated that she did not hear anything related to the first fight. (Exhibit A at 67-68). *See also* (Doc. 89-1 at ⁋ 4); (Exhibit A at 67-68). Though Plaintiff attempts to state that the conversations could be heard, he has no knowledge of the fact because he has never been in the Officer Station himself. It is not plausible that the officers could hear the first fight, as Plaintiff alleges, and as a result, Plaintiff states no claim for failure to protect in relation to the first fight.

C. <u>Plaintiff cannot demonstrate the Subjective element as it relates to second fight and Defendant did not fail to intervene on Plaintiff's behalf.</u>

Prior to the second fight, Plaintiff describes a conversation that Defendant allegedly had with Plaintiff. (Doc. 78-2 at 17, 30-32, 34). During this alleged conversation, Plaintiff presumes that Defendant heard the exchange and did nothing yet offers no evidence to support his position. There is no evidence supporting any fact which suggests that the other officer relayed the information to Defendant nor that the information relayed by Plaintiff would have alerted Defendant to the fact that Plaintiff was at a substantial risk of serious harm. *Wade*, 106 F.4th at 1253.

Furthermore, Plaintiff attempts to paint a portrait of his being beaten up, bloodied, and in torn clothing. (Doc. 78-2 at 43-45). *See also* (Doc. 52 at ⁋⁋ 35, 65). Plaintiff's statements related to his appearance at the time are far from accurate; instead, if he suffered any injuries at all,  as described by several other

witnesses to the incident. (Doc. 78-6 at 63-65). Additionally, Plaintiff merely presumes that Defendant saw his condition. *See* (Doc. 52 at ⁋⁋ 35, 65). Defendant indicates that she did not observe Plaintiff's condition at any point. (Doc. 89-1 at ⁋ 4); (Exhibit A at 41). No evidence has been uncovered to support Plaintiff's assertions.

Moreover, evidence exists that inmates attempted to cover up that the first fight occurred. (Doc. 78-6 at 66-68). There also exists evidence that inmates may have purposely tried to distract or obstruct officers from being able to see what was occurring during the second fight. (Doc. 78-7 at 26, 83, 84). *Cf.* (Doc. 78-6 at 87) (indicating that officers would only have known about the issue if they were paying attention and watching). The actions by inmates in trying to cover up the first fight and distract the officers weighs against Plaintiff's allegations that the officers were subjectively aware of the fights.

Finally, there is a substantial amount of evidence that exists which supports the fact that Defendant acted reasonably in response to risk of serious injury in relation to the second fight.[5] *Wade*, 106 F.4th at 1253. As it relates to the second fight, the officers acted reasonably in response to the fight. As detailed by Defendant, and a declaration from Mike Harrell, the officers present were

_____

[5] Defendant does not address this defense in relation to the first fight under a theory of failure to protect because the claim relating to the first fight is best understood as a failure to intervene claim since due to the spontaneous nature of the fight, there was no indication that a fight would occur.

responsible for reporting on the incident and acting out the Florida Department of Corrections' tactical policies. (Docs. 78-35 at ¶ 5; 89-1 at ¶ 6). At a minimum, when the officers observed the second fight, they were required to report the incident and begin the Incident Command System ("ICS"). (Doc. 78-35 at ¶ 5; 89-1 at ¶ 6). The officers themselves could not leave the officer station until a sufficient amount of other responding staff were present, as to do so would put themselves and the institution at risk. (Docs. 78-35 at ¶ 5; 89-1 at ¶¶ 7-8). Once the appropriate number of staff arrived, one of the two officers could then become involved with the assistance of other staff, and the other officer would remain in the Officer Station. (Docs. 78-35 at ¶¶ 6-7; 89-1 at ¶ 9). The officer in the Officer Station is necessary to open doors to allow staff to arrive. (Docs. 78-35 at ¶ 6; 89-1 at ¶ 7). *See also* (Doc. 52 at ¶ 37) (acknowledging that one officer must always remain in the officer station).

In this case, after noticing that P-2 was being disruptive she alerted other staff to be on standby. (Doc. 89-1 at ¶ 5); (Exhibit A at 68-69). Once the fight began, Defendant utilized the ICS to report the fight and request assistance. (Doc. 89-1 at ¶ 6); (Exhibit A at 68-69). *See also* (Doc. 78-30 at 3) (demonstrating that the length of time for the response was about 10 minutes). Defendant could not leave the officer station to physically intervene because of her own safety concerns and the fact that she needed to remain in the officer station to open doors for

reporting officers. (Doc. 89-1 at ₱₱ 7-8); (Exhibit A at 69). Defendant also believes that despite a second officer normally being present with her in the wing, she was alone in the officer station at the start of the fight. (Doc. 89-1 at ₱ 9); (Exhibit A at 69). By the time the officers had arrived in the Dorm, the fight had already ended. As a result, under the circumstances, Defendant acted reasonably in response to any substantial risk of harm which could potentially be suffered by Plaintiff once she determined one existed.

Plaintiff's case is like a case which was recently decided in the Middle District of Florida. *See* (Doc. 78-36). In the case, two inmates were spontaneously attacked by a third inmate and the only officer near the area was a sole officer in the Officer Station. *Id*. In the circumstance, the officer could not leave the Officer Station, and only initiated ICS, resulting in a response by a Captain. *Id*. After extensively analyzing the arguments by the parties, the court determined that the defendant could not be held liable for Plaintiff's injuries. *Id*. This Court should find in favor of Defendant for the same reasons.

D. Defendant did not interfere with Plaintiff's medical treatment.

Plaintiff also claims that Defendant interfered with Plaintiff's medical treatment, and as a result caused him injury. *See* (Doc. 52 at 9-10). Plaintiff's claim is due to be denied for reasons like his other claims.

First, in relation to the first fight, there was no objective basis for Plaintiff to receive immediate medical treatment. If Plaintiff had any injuries, they were minor and did not demonstrate an objective basis that Plaintiff was at a substantial risk of harm. *See e.g.* (Doc. 78-2 at 43-45). Plaintiff was not even concerned with going to medical. *Id*. There was no objective indication that Plaintiff required immediate medical attention.

Second, after the first fight, there was no subjective determination made by Defendant, or any officer, that Plaintiff needed immediate medical attention, which left untreated, would lead to a substantial risk of harm. Plaintiff's injuries were minor at worst, and did not impart on any individual a subjective impression that if left untreated immediately, would cause a substantial risk of serious harm. (Doc. 78-2 at 43-45). Plaintiff was not even concerned with going to medical at the time. *Id*. Defendant indicates that she was not aware of the injuries which Plaintiff claims to have had. (Doc. 89-1 at ⁋ 4); (Exhibit A at 41).

In relation to the second fight, it is undisputed that Plaintiff received immediate medical attention which necessitated him going to the hospital. (Doc. 78-2 at 43-45). *See also* (Doc. 52 at ⁋⁋ 50-52). All testimony confirms that after the officers responded, Plaintiff was taken out on a stretcher before any other inmate was removed. (Doc. 78-6 at 33). Plaintiff himself does not know how quickly he

was removed from the wing because he fell unconscious shortly after the second fight. (Doc. 78-2 at 58). *See also* (Doc. 52 at ❡ 49).

**II.    Defendant is entitled to Qualified Immunity as it relates to Plaintiff's claim for Failure to Protect, Failure to Intervene, and Interference with Medical Treatment.**

In this case, it is clear Defendant is entitled to Qualified Immunity on Plaintiff's Constitutional claims related to an allegation that Defendant failed to protect, failed to intervene and interfered with Plaintiff's medical treatment. Defendant is entitled to Qualified Immunity as she did not violate Plaintiff's constitutional rights, and further, Defendant did not violate any "clearly established law."

Qualified Immunity offers complete protection for government officials sued in their individual capacities who act within their discretionary authority. *Pearson v. Callahan*, 555 U.S. 223 (2009). Officials are entitled to Qualified Immunity "unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (January 22, 2018) (citing *Reichie*, 566 U.S. at 664). Courts are not required to address the two prongs of this test in any particular order. *Pearson*, 555 U.S. 223.

"'Clearly established' means that, at the time of the officer's conduct, the law was 'sufficiently clear' that every 'reasonable official would understand that

what he is doing' is unlawful." *Wesby*, 138 S. Ct. at 589 (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). *See also Santana v. Miami-Dade County*, 688 Fed. App'x 763, 770 (11th Cir. 2017) (stating that the circumstances must be viewed "from the perspective of a reasonable officer on the scene, rather than with the 20/20 hindsight. [While] allow[ing] for the fact that officers are required to make 'split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in particular situation.") In other words, existing law must have placed the constitutionality of the officer's conduct "beyond debate." *Wesby*, 138 S. Ct. at 589 (citing *al-Kidd*, 563 U.S. at 741). The "demanding standard protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Wesby*, 138 S. Ct. at 589 (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

"To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent." *Wesby*, 138 S. Ct. at 589. "The rule must be 'settled law,' which means it is dictated by 'controlling authority' or 'a robust consensus of cases of persuasive authority.'" *Id*. (internal citations removed). "It is not enough that the rule is suggested by then-existing precedent." *Id*. "The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id*. "Otherwise, the rule is not one that 'every reasonable official' would know." *Id*.

Furthermore, when considering a defense of Qualified Immunity, courts must only consider the facts that were knowable to the Defendant. *White v. Pauly*, 137 S. Ct. 548, 550 (2017). The United States Supreme Court has recently reversed lower courts in several decisions, and in each decision the Court has expressed the concern that clearly established law should not be defined "at a high level of generality." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015). The dispositive question is "whether the violative nature of *particular* conduct is clearly established." *Id.* (citing *al-Kidd*, 563 U.S. 731 at 741 (2011)). *See e.g. Mullenix*, 136 S. Ct. 305 (The United States Supreme Court determined that an officer had acted reasonably under circumstances involving a clear violation of the general rule that deadly force may not be used "against a fleeing felon who does not pose a significant threat of harm to the officer or others."). "The clearly established law must be 'particularized to the facts of the case. Otherwise, 'plaintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *White*, 137 S. Ct. at 552.

In this case, Defendant did not violate Plaintiff's constitutional rights. *See* Section I, *supra*. Defendant also did not deny Plaintiff medical treatment. *See* Section II, *supra*.

Alternatively, if this Court somehow finds that Defendant's actions constituted a Constitutional violation, there has not been a violation of "clearly established law" which would allow for liability. Case law suggests that Defendant's actions relative to the July 20, 2022, incident was appropriate and that Defendant did not act unreasonably under the circumstances. *See e.g.* (Doc. 78-36) (finding no liability in a case involving an attack on two inmates in which a single officer was present in an officer station but did not physically intervene in the situation and only called for backup).

Moreover, presuming that Defendant was present and was mistaken in her perceptions about needing to do more than initiate ICS, Defendant still would be entitled to Qualified Immunity. In an Opinion issued by the United States Supreme Court, the Court overturned a decision by the DC Circuit Court which found that the officers in the case were not entitled to Qualified Immunity. *Wesby*, 138 S. Ct. 577. In the case, the Court addressed the decision by the DC Circuit[6] and specifically stated that "[e]ven assuming the officers lacked actual probable cause to arrest the partygoers, the officers are entitled to qualified immunity because they 'reasonably but mistakenly conclude[d] that probable cause [wa]s present.'" *Id.* at

---

[6] Prior to reaching the Qualified Immunity issue, a majority of the Court found that probable cause did in fact exist and that the Appellate Court had made an incorrect finding. However, even though the probable cause issue would have resolved the case, the Court specifically addressed Qualified Immunity due to the clearly erroneous ruling on the issue by the DC Circuit. *See Wesby*, 138 S. Ct. at 589.

591. In making such a finding, the Court belied the fact that there was not "a single precedent – much less a controlling case or robust consensus of cases – finding a Fourth Amendment violation 'under similar circumstances.'" *Id*. And the Court went on to say that the case was not an "'obvious case' where a 'body of relevant case law' is not needed." *Id*. After making such a finding, the Court overturned a judgment of nearly $1 million against the officers. *Id*.

Like in *Wesby*, even if Defendant was mistaken in her perceptions, Defendant would still be entitled to Qualified Immunity. There is not a "controlling or robust consensus of cases" demonstrating the unlawfulness of Defendants' actions. *Wesby*, 138 S. Ct. at 591. Nor is there an "obvious case" which would demonstrate such a precedent. *Id*. at 591. In fact, based on Florida statutory law, and decisions from this Court, the 11th Circuit, and the U.S. Supreme Court, there would seem to be a "controlling or robust consensus of cases" demonstrating that the officer's actions were in fact lawful. As a result, Defendant should be entitled to Qualified Immunity.

**III.    Defendant renews her claim that Plaintiff failed to exhaust his administrative remedies in relation to Plaintiff's medical claim.**

Previously, Defendant asserted that Plaintiff failed to exhaust his administrative remedies related to his medical claim, and that he is not entitled to punitive damages as a matter of law. *See* (Doc. 106). Plaintiff responded to the arguments. (Doc. 109). The Motion that Defendant made the arguments remains

23

outstanding and has not yet been ruled upon. Defendant renews the arguments for

purposes of receiving a decision on the merits in this Motion.

## <u>CONCLUSION</u>

**WHEREFORE**, for the foregoing reasons, Defendant respectfully requests

this Court enter Summary Judgment in her favor.

Respectfully Submitted,

**JAMES UTHMEIER**
**ATTORNEY GENERAL**
Office of the Attorney General
The Capitol PL-01
Tallahassee, Florida 32399-1050
Telephone: (850) 414-3300
Facsimile: (850) 488-4872

<u>/s/ Erik Kverne</u>
Erik Kverne
Special Counsel – Assistant Attorney General
Florida Bar No.: 99829
Erik.Kverne@myfloridalegal.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing *Defendant's Motion for Summary Judgment* was e-filed electronically and served electronically on Plaintiff's counsel of record through CM/ECF on June 16, 2025.

/s/ Erik Kverne
Erik Kverne
Special Counsel – Assistant Attorney General
Florida Bar No.: 99829
Erik.Kverne@myfloridalegal.com

## CERTIFICATE OF COMPLIANCE WITH WORD LIMIT

**I HEREBY CERTIFY** that the above Motion and Supporting Memoranda required by N.D. Fla. Loc. R. 7.1(E) contains **5,681** words, not exceeding 8,000 total word maximum created by N.D. Fla. Loc. R. 7.1(F).

/s/ Erik Kverne
Erik Kverne
Special Counsel – Assistant Attorney General
Florida Bar No. 99829
Erik.Kverne@myfloridalegal.com