IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

**DEVON CURRIE**
**DOC# A51859,**

    **Plaintiff,**

v.                                Case No.: 5:23-cv-183-TKW/MJF

**MCKINNIE, ET AL.,**

    **Defendants.**
_____/

## DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**Green** ("Defendant"), through counsel, Replies to Plaintiff's Response to Defendant's Motion for Summary Judgment pursuant to N.D. Fla. Loc. R. 56.1(D). Defendant states the following in Reply:

## STATEMENT OF UNDISPUTED MATERIAL FACTS

Defendant restates and re-alleges the summary of Plaintiff's claims and Statement of Undisputed Material Facts contained within Co-Defendant's Motion for Summary Judgment. (Doc. 78 at 1-10).[1]

---

[1] Each document filed in this case as part of the Electronic Case File will be referenced as "Doc." followed by the document number.

1

## **MEMORANDUM OF LAW**

If there is clear evidence contrary to Plaintiff's allegations, then a genuine dispute of material fact does not exist. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (stating that if "two parties tell different stories [where one] is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

Plaintiff's Response to Defendant's Motion for Summary Judgment addresses each of Defendant's arguments and attempts to create disputes of fact or present facts in a manner intended to manipulate the situation. Plaintiff's attempts rely almost exclusively on inadmissible evidence or misapprehend the cases that he cites in support of his Response. Plaintiff's unsuccessful attempts to create disputes of fact are addressed below.

**I.     Plaintiff relies almost exclusively on inadmissible evidence to create a dispute of fact as it relates to the elements he must prove.**

Defendant has already objected to several pieces of evidence that Plaintiff presents which are inadmissible and should not be considered. *See* (Doc. 101). The objections relate to (Docs. 90-3; 90-4), and several hearsay statements purportedly

2

made by "gang members" or "Latin Kings."[2] *Id*. As detailed in Defendant's Objections, none of the evidence should be considered.

**II.     Plaintiff abandons any claim relating to Defendant's failure to protect or intervene as it relates to the first fight or his cause of action for interference with medical treatment.**

Within Defendant's Motion for Summary Judgment, Defendant points out at length that Plaintiff fails to state a cause of action relating to failure to protect or intervene as it relates to the first fight on July 20, 2022. (Doc. 119 at 13-14). Plaintiff makes no attempt to even refute Defendant's argument related to the first fight and as a result has abandoned any claim related to it.

Additionally, Plaintiff does not address Defendant's Motion for Summary Judgment as it relates to interference with medical treatment. *See* (Doc. 120 at 17-19). As a result, Plaintiff has also abandoned his claim of interference with medical treatment.

However, even if Plaintiff had responded to the claim, he still would have failed to state a cause of action. After the first fight, Plaintiff did testify that he had

---

[2] In his Response to Defendant's Motion for Summary Judgment, Plaintiff includes an entire subsection in his facts titled "Video Spoliation." Plaintiff's assertion is completely misplaced as there is no indication that spoliation – the intentional destruction of evidence, Fed. R. Civ. P. 37(e)(2), – of the video evidence occurred. It appears that the video footage was lost, not destroyed, and neither Defendant nor Co-Defendant played no role in the preservation of the video or ever had possession of the video at any point. No adverse action can be taken against Defendant or Co-Defendant since they had no role in preserving the missing video.

bleeding wounds; however, Plaintiff was explicit during his deposition that he did not need immediate medical attention. (Doc. 78-2 at 43-45). There was no substantial risk of harm related to Plaintiff's alleged injury after the first fight and certainly, Defendant did not appreciate any such risk given that Plaintiff never complained about his injuries. *See* (Doc. 119 at 17-19).

Further, Plaintiff does not address Defendant's argument related to the second fight. Defendant points out, and it is entirely undisputed, that Plaintiff was immediately taken to medical, and later the hospital, once support staff arrived. (Doc. 119 at 18-19). Plaintiff received treatment after the second incident, and as a result, cannot state a cause of action.

### III. Plaintiff fails to demonstrate a claim for deliberate indifference as it relates to Plaintiff's remaining claims.

Plaintiff additionally fails to demonstrate a cause of action for deliberate indifference. Plaintiff's claims fail on both the objective and subjective components required to state a cause of action for deliberate indifference. *See Cox v. Nobles*, 15 F. 4th 1350, 1357-58 (11th Cir. 2021). *See also Wade v. McDade*, 106 F. 4th 1251, 1253 (11th Cir. 2024) (defining the subjective element of deliberate indifference which is required in addition to the objective element).

A. <u>Plaintiff fails to demonstrate an objectively serious risk of harm</u>.

In demonstrating a substantial risk of serious harm, Plaintiff relies on three purported facts: (1) "the number of violent criminals in the dorm, some with homicidal histories;" (2) "the loud, repeated, aggressive verbal threats by Latin Kings to Mr. Currie to 'check in' – which were heard by McKinnie and Green;" and (3) the fact that during count the officers could see that Mr. Currie had already been injured." (Doc. 120 at 22-23). Plaintiff's argument is identical to what was presented in response to Co-Defendant McKinnie's Motion for Summary Judgment. *See* (Docs. 92 at 22-24; 100 at 4-6). *See also* (Doc. 119 at 8-12) (preemptively addressing the argument). Plaintiff's alleged facts do not demonstrate an objectively serious risk of harm.

However, one aspect of Plaintiff's Response that was not addressed is the concurrence by Justice Thomas in *Farmer v. Brennan*, 511 U.S. 825, 858-62 (1994) which Plaintiff cites to. *See* (Doc. 120 at 22). In referencing the quote, Plaintiff attempts to suggest that Justice Thomas is *supporting* his position that because prisons house dangerous individuals, there is a near-automatic objective risk substantial of harm. *See Id.* at 22. Plaintiff's position could not be further from what the content of Justice Thomas's concurrence argues. A review of Justice Thomas's concurrence demonstrates that it is his belief that a deliberate

5

indifference claim does not exist under the 8th Amendment unless there is a corresponding demonstration that the action was done to punish the inmate. *Farmer*, 511 U.S. at 858-62. Plaintiff makes no demonstration that there is any intent by Defendant to punish Plaintiff, nor does any subjective intent exist. If Plaintiff desires for Justice Thomas's concurrence to be applicable, Plaintiff loses without even addressing whether the objective and subjective components of a deliberate indifference claim are present.[3]

B. <u>Plaintiff fails to demonstrate the subjective component of deliberate indifference.</u>

Plaintiff also fails to demonstrate the subjective component of deliberate indifference. Recently, the 11th Circuit clarified that the subjective component requires,

> [T]hat the defendant acted with "subjective recklessness as used in criminal law," and that in order to do so, the plaintiff must demonstrate that the defendant actually knew that his conduct – his own actions or omissions – put the plaintiff at substantial risk of serious harm. We add the caveat, likewise prescribed by *Farmer*, that even if defendant "actually knew of a substantial risk to inmate health or safety," he cannot be found liable under the Cruel and Unusual Punishments Clause if he "responded reasonably to th[at] risk.

---

[3] Plaintiff's reference to Justice Alito's decision in *Kincaid v. Williams*, 600 U.S. __, 143 S.Ct. 2414, 2418 fn 2 (2023) is also inapplicable to this case. *Kincaid* was denied certiorari and did not involve an 8th Amendment claim, meaning that Justice Alito's statement in a footnote is entirely *obiter dicta*.

*Wade*, 106 F. 4th at 1253 (en banc) (internal citations removed). *See also Farmer v. Brenna*, 511 U.S. 825, 839 (1994); *Terry v. Baily*, 376 Fed. App'x 894, 895-96 (11th Cir. 2010). Plaintiff does not demonstrate the required standard.

Plaintiff's argument in attempting to demonstrate the subjective standard is that Green was aware of the first fight and "did nothing to stop it." (Doc. 120 at 23-24). Plaintiff further alleges that Green appreciated the injuries to Plaintiff and did nothing to help him based on his injuries. *Id*. at 24-25. Finally, Plaintiff states that Green did not act reasonably after appreciating a substantial risk of harm. *Id*. at 25-26. Plaintiff's argument does not demonstrate the high burden he must demonstrate to meet the standard of criminal recklessness.

First, there is no indication that Defendant appreciated that her own actions would place Plaintiff at a substantial risk of harm. It is undisputed that Defendant *did act* in two separate ways: (1) by requesting that backup be on standby after recognizing that the dorm was being rowdy and (2) that *while* the second fight was going on she called for backup. (Doc. 89-1 at ¶¶ 5-7) . Despite Plaintiff's attempts to allege that Defendant *should have* been aware of the risk of substantial harm to Plaintiff, *see e.g.* (Doc. 120 at 24-26), the first time that Defendant became aware of any risk of harm was after recognizing that the dorm was rowdy and disruptive. (Doc. 89-1 at ¶¶ 6-7). Plaintiff's "injuries" did not place Defendant on notice of a

7

substantial risk of harm because of Plaintiff's *own statements* he alleges he made to her. (Doc. 78-2 at 43-45). Defendant did not appreciate any risk until she returned to the officer station and recognized that the dorm was rowdy and disruptive. (Doc. 89-1 at ¶¶ 5-7).

The risk of harm Defendant encountered at the time, assuming Plaintiff's facts are true, are that an inmate had torn clothing and had minor amounts of blood on his shirt but did not need immediate medical attention. When Defendant did recognize the problem, Defendant *acted* by requesting that individuals be placed on standby. (Doc. 89-1 at ¶ 5). Defendant did not sit around idly and do nothing but instead acted in what she viewed was appropriate based on the circumstances before her. *Id*. At the time, there was not a substantial risk of harm that could befall Plaintiff due to the alleged "threats" (assuming their admissibility) not being specifically directed to Plaintiff and Plaintiff's own statements indicating a lack of immediacy to act.

It was not until the fight began that there was a substantial risk of harm which was apparent to Defendant. (Doc. 89-1 at ¶¶ 6-7). However, when the substantial risk of harm to Plaintiff became apparent to Defendant, she did act. *Id*. Defendant immediately called for backup which responded as quickly as possible. (Doc. 89-1 at ¶ 7). Any delay in the response time was not due to Defendant but

rather was based on a need to have enough other responding staff were present. (Docs. 78-28 at 90-93; 78-35 at ¶ 5; 89-1 at ¶ 7).

The case that Plaintiff cites, *Woodyard v. Ala. Dep't of Corr.*, 700 Fed. App'x 927 (11th Cir. 2017), is not helpful to Plaintiff. The case involved a situation where an inmate approached an officer and told him that he was going to be attacked by an inmate and was later attacked by the inmate. *Woodyard*, 700 Fed. App'x at 929-30. Like this case, the plaintiff in *Woodyard* brought a claim for failure to protect and failure to intervene against the defendant. *Id*. On appeal was the decision by the district court to grant a motion for summary judgment filed on behalf of the defendant. *Id*. After analyzing the plaintiff's claims, the 11th Circuit affirmed the decision relating to the failure to protect based on the defense of Qualified Immunity, *Id*. at 933, but reversed the district court's decision relating to the plaintiff's failure to intervene claim. *Id*. at 934.

In affirming the failure to protect claim, the 11th Circuit explicitly stated,

> As the Eighth Circuit has recognized, "threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm. . . . Until binding precedent clarifies the circumstances in which threats between inmates <u>are</u> sufficient to allow the jury to impute knowledge of such risks to an officer, we cannot say that in the circumstances of this case a refusal to act on a threat (or threats accompanied by drunkenness) amounted to a clearly established constitutional violation.

9

*Woodyard*, 700 Fed. App'x at 933 (emphasis in original and internal citations removed). In reversing the failure to protect claim, the 11th Circuit focused on the fact that the defendant delayed acting in what could have amounted to five (5) minutes. *Id*. at 933-34. Based on the delay, the 11th Circuit indicated that the failure to act in a quicker manner could have resulted in a constitutional claim for failure to intervene. *Id*.

As it stands, there is no clear "binding precent [which] clarifies the circumstances in which threats between inmates <u>are</u> sufficient to allow the jury to impute knowledge of such risks to an officer." *Woodyard*, 700 Fed. App'x at 933 (emphasis in original). In fact, in *Nelson v. Tompkins*, 89 F. 4th 1289 (11th Cir. 2024), Judge Carnes' concurrence suggests that there is no heightened standard for officers to act relating to inmates in prison. *Id*. at 1306. Rather, as described by the 11th Circuit separately, the challenged condition must be "extreme." *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004). As a result, the same result should be reached in this case that was reached in *Woodyard* relating to the failure to protect claim brought by Plaintiff.

However, the opposition decision should be reached in comparison to the *Woodyard* failure to intervene claim. Unlike in *Woodyard*, Defendant did not wait any time to act once the fight began between Plaintiff and the other inmates. (Doc.

89-1 at ¶¶ 5-7). There was no five (5) minute delay in calling for backup. *See Woodyard*, 700 Fed. App'x at 933-34. There may have been a delay in backup *arriving* due to the need for a sufficient number of officers to respond, but there was no delay in *calling* for backup. As a result, Plaintiff's claims are due to be dismissed based on the very case that they cite.

### IV. Defendant is entitled to Qualified Immunity.

Plaintiff challenges Defendant's argument relating to Qualified Immunity. *See* (Doc. 120 at 29-34). Plaintiff presents three arguments in response to Defendant's invocation of Qualified Immunity: (1) Defendant failed to meet her initial burden, (2) the law was clearly established that Defendant's actions were wrong, and (3) Qualified Immunity is not available to defendants for suits brought under 1983. *Id*. Plaintiff's arguments do not demonstrate that Defendant's invocation of Qualified Immunity should be denied.

First, in addressing Plaintiff's least compelling argument, Qualified Immunity is available to defendants in section 1983 claims. The United States Supreme Court has repeatedly held that Qualified Immunity is available to officers sued under the 8th Amendment. *See e.g. Taylor v. Riojas*, 592 U.S. 7, 9 (2020) ("Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the


circumstances she confronted."). Plaintiff's argument appears to be an attempt to change the law, but as it stands right now, the law is clear that Defendant is entitled to Qualified Immunity.

Second, Plaintiff points out that the initial burden for invoking Qualified Immunity is on Defendant. *See* (Doc. 120 at 30). The initial burden on Defendant is for her to demonstrate "objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988). Plaintiff is correct that Defendant did not even bother demonstrating her initial burden in her Motion for Summary Judgment. However, the reason for the failure to demonstrate the initial burden is because it was believed that the required burden was undisputed.

In his operative Complaint, Plaintiff explicitly states that "[a]ll the above Defendants acted under color of law." (Doc. 52 at ⁋ 9). To demonstrate color of law, Defendant "requires that the defendant in a section 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Myers v. Bowman*, 713 F.3d 1319, 1329 (11th Cir. 2013). Plaintiff would have to demonstrate that Defendant was acting under color of law to even bring a claim against her, as without it, he is

missing an essential element. *Id*. Moreover, Plaintiff's Response also presumes – except for Qualified Immunity purposes – that Defendant was acting in her discretionary function as a corrections officer. (Doc. 120 at 6, 10-12, 13-15). It is baffling that Plaintiff would even attempt to dispute this requirement when he presumes the requirement to bring a claim against Defendant in the first place.

Furthermore, the objective facts present in this case demonstrate that the initial burden placed on Defendant is met. This case involves claims by Plaintiff against Defendant for failure to protect and intervene on Plaintiff's behalf as a corrections officer. *See* (Doc. 52 at 7-8). In the situation sued about, Defendant was acting as a corrections officer and exercised her discretionary functions to maintain Plaintiff in his dorm and call for backup after the attack began. (Doc. 89-1 at ¶ 3). There can be no doubt that Defendant did met her burden and that the requirement to rebut Qualified Immunity then shifts to Plaintiff to demonstrate a constitutional violation and that the law was clearly established. *Zeigler v. Jackson*, 716 F.2d 847, 849 (11th Cir. 1983).

Finally, the law was not clearly established that Defendant's actions violated the 8th Amendment at the time of the incident. In attempting to rebut Defendant's argument, Plaintiff almost exclusively relies on *Woodyard*. (Doc. 120 at 31-32). The problem with Plaintiff's reliance on *Woodyard* has already been discussed at

length, *see* Section III, *supra*, and Plaintiff's analysis under the Qualified Immunity standard does not change the outcome. Unlike in *Woodyard*, Defendant did not delay in acting once she became subjectively aware of the attack involving Plaintiff.

Additionally, Plaintiff's reliance on case law which identifies a "broader, clearly established principle," *see Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005), is also misplaced. There is no "broader, established principle" applicable to this situation, as addressed by *Woodyard*. *Woodyard*, 700 Fed. App'x at 933. The situation Defendant was face with was one in which an inmate who had minor injuries, and did not need immediate medical treatment, did not inform Defendant that he was just attacked, did not inform Defendant of whom his "attackers" were, and was not in at any risk of serious harm. Defendant did not know of any potential for harm until she observed the dorm being rowdy after returning to the officer station. (Doc. 89-1 at ¶ 5). Certainly, and unlike the defendant in *Woodyard*, Defendant immediately acted once the fight began. *Id*. at ¶¶ 6-7. There is no clearly established principle that would demonstrate that Defendant's actions (calling for backup, providing observations to the backup of what was occurring, and remaining in the Officer Station to allow backup to

14

respond) were anything but consistent with the requirements of the 8th Amendment.

Importantly, even if she was mistaken in her belief that her actions were sufficient under the circumstances, she still would be entitled to Qualified Immunity. *District of Columbia v. Wesby*, 583 U.S. 48, 591 (2018) ("Even assuming the officers lacked probable cause to arrest the partygoers, the officers are entitled to qualified immunity because they 'reasonably but mistakenly conclude[d] that probable cause [wa]s present.'"). Defendant is entitled to Qualified Immunity, and Plaintiff's claims against her must be dismissed.

## CONCLUSION

**WHEREFORE**, Defendant requests that this Court find that Plaintiff has not raised any issue of disputed Material Fact and grant her Motion for Summary Judgment.

Respectfully Submitted,

**JAMES UTHMEIER**
**ATTORNEY GENERAL**
Office of the Attorney General
The Capitol PL-01
Tallahassee, Florida 32399-1050
Telephone: (850) 414-3300
Facsimile: (850) 488-4872

/s/ Erik Kverne
Erik Kverne
Special Counsel – Assistant Attorney General
Florida Bar No.: 99829
Erik.Kverne@myfloridalegal.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing *Defendant's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment* was e-filed electronically and served electronically on Plaintiff's counsel of record through CM/ECF on July 21, 2025.

/s/ Erik Kverne
Erik Kverne
Special Counsel – Assistant Attorney General
Florida Bar No.: 99829
Erik.Kverne@myfloridalegal.com

## CERTIFICATE OF COMPLIANCE WITH WORD LIMIT

**I HEREBY CERTIFY** that the above Reply and Supporting Memorandum totals **3,103** words not exceeding 3,200 total words as required by N.D. Fla. Loc. R. 56.1(D).

/s/ Erik Kverne
Erik Kverne
Special Counsel – Assistant Attorney General
Florida Bar No.: 99829
Erik.Kverne@myfloridalegal.com