## UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA PANAMA CITY DIVISION

DEVON CURRIE,

     Plaintiff,

v.                                                            Case No. 5:23-cv-183-TKW-MJF

MICHELLE MCKINNIE, *et al.*,

     Defendants.

_____/

## <u>REPORT AND RECOMMENDATION</u>

In this § 1983 action, Plaintiff alleges that three correctional officers violated the Eighth Amendment by failing to protect Plaintiff from inmate attacks and by exhibiting deliberate indifference to Plaintiff's medical needs after the attacks. Doc. 52. Two of the three Defendants—Michelle McKinnie and Delisia Green—filed respective motions to dismiss only Plaintiff's indifference to medical needs claim. Docs. 58, 106. Plaintiff responded in opposition. Docs. 64, 109. Because Plaintiff failed to exhaust his remedies regarding his claim of deliberate indifference to a serious medical need, the PLRA requires the District Court to grant McKinnie's and Green's motions to dismiss.

## BACKGROUND

Plaintiff was an inmate whom the Florida Department of Corrections ("FDC") housed at the Apalachee Correctional Institution. Doc. 52 at 1.

## A.    The Inmates' First Attack of Plaintiff

On July 20, 2022, three inmates attacked Plaintiff using wooden broom and mop handles. *Id.* at 2–3. Plaintiff alleges that Defendants Michelle McKinnie and Delisia Green observed the attack but did nothing to "stop, defuse, or control" it.[1] *Id.* at 3–4.

Following the initial attack, Plaintiff returned to his bunk with torn clothing and "bleeding gashes" on his face, which Plaintiff alleges were visible to McKinnie and Green. *Id.* at 4.

Shortly thereafter, Green emerged from the officer's station to conduct a roster count of the inmates while McKinnie observed. *Id.*

---

[1] Plaintiff spells Green's Christian name as "Delisia." Doc. 41 at 2. Defendants also sometimes spell it that way, Doc. 89-1 at 2, as does the notarized oath attached to her deposition. Doc. 119-1 at 73. Other times, however, Defendants spell her name "Delisha." Docs. 58 at 2; 87 at 1; 89 at 1. In one document—a declaration purportedly signed by Green—Green uses both versions. Doc. 89-1 at 2.

During the count, several inmates shouted and threatened Plaintiff. *Id.* When Green approached Plaintiff's bunk, Plaintiff "pleaded with her to let him check in to protective custody," but Green declined. *Id.* at 4–5. McKinnie overheard the exchange and "failed to help though she would have been able to do so." *Id.* at 5.

**B.   The Inmates' Second Attack of Plaintiff**

As the roster count continued, six inmates attacked Plaintiff a second time, stabbing him in the neck, chest, both shoulders, and his side resulting in a punctured lung. *Id.* at 5–6. Plaintiff lost consciousness during the attack and was transported to the Tallahassee Memorial Hospital for treatment. *Id.* at 6.

**C.   Plaintiff's Grievances**

Between July 1, 2022, and July 5, 2023, the date Plaintiff initiated this lawsuit, Doc. 1, Plaintiff filed eight formal grievances and fourteen informal grievances. Doc. 44-1 at 1. He also filed five grievance appeals. Doc. 44-2 at 1. Defendants and Plaintiff limited their discussion to only the grievances that addressed the July 20, 2022, incident, which are summarized below.

***Grievances Regarding Defendants' Alleged Failure to Protect Plaintiff.*** On August 18, 2022, Plaintiff filed his only informal grievance related to the attacks of July 20, 2022—#102-2208-0258—which the assistant warden denied. Docs. 1 at 10; 44-1. On August 28, 2022, Plaintiff responded to the assistant warden's denial by submitting a formal grievance—#2208-102-198—which the warden denied. Docs.1 at 11–12; 43-2 at 3. On September 12, 2022, Plaintiff appealed the warden's denial by submitting an administrative appeal—#22-6-27879—which the FDC secretary denied. Doc. 1 at 13–15.

***Grievances Regarding Placement in Close Management.*** On September 7, 2022, Plaintiff filed an informal grievance—#102-2209-0098—to complain that FDC staff failed to advise Plaintiff officially that he was approved for close management. Doc. 49-1 at 8. This grievance does not include *any* facts related to the attacks of July 20, 2022. *Id.*

That same date, September 7, 2022, Plaintiff responded to the assistant warden's decision denying Plaintiff's grievance by filing a formal grievance—#2209-102-048—to complain that Plaintiff should not have been placed in close management following the attacks of July 20,

2022. *See id.* at 6–7. In that grievance, Plaintiff references Defendants' actions on July 20, 2022. Plaintiff states in part: "because the 2 officers that were in the officers station didn't act to help me or to stop these attackers, I was forced to defend myself." *Id.* at 7. On September 13, 2022, the warden denied Plaintiff's formal grievance and affirmed Plaintiff's placement in close management. *Id.* at 6.

On September 13, 2022, Plaintiff appealed the warden's denial of Plaintiff's formal grievance by submitting an administrative appeal— #22-6-28556—to the FDC secretary. *Id.* at 3–5. Plaintiff's appeal grieves his placement in close management and also references Defendants' actions during the attacks. *Id.* The FDC secretary denied the appeal. *Id.* at 2.

Plaintiff did not file any other grievances or appeals related to the attacks of July 20, 2022, Docs. 44-1, 44-2, and Plaintiff has not submitted any additional grievances that purportedly relate to the attacks or McKinnie's and Green's alleged deliberate indifference to Plaintiff's medical needs. Doc. 64 at 2–4; Doc. 109 at 4–5; *see generally* Doc. 92; Doc. 120.

### D.    Plaintiff's Second Amended Complaint

In his second amended complaint, Plaintiff asserts two Eighth-Amendment claims against McKinnie and Green: (1) failure to intervene and protect from harm; and (2) "interference with medical treatment," *i.e.*, deliberate indifference to a serious medical need. Doc. 52 at 7, 9.

### E.    Defendants' Respective Motions to Dismiss

McKinnie and Green move to dismiss only Plaintiff's deliberate indifference to a serious medical need claim. McKinnie and Green argue that Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). Docs. 58, 106.

### STANDARD

Under the PLRA, a prisoner may not file a section 1983 action "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *Dimanche v. Brown*, 783 F.3d 1204, 1210 (11th Cir. 2015). Exhaustion of such remedies is a mandatory precondition to suit. *Ross v. Blake*, 578 U.S. 632, 638 (2016); *Jones v. Bock*, 549 U.S. 199, 211 (2007). The PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *Varner v. Shepard*, 11 F.4th 1252, 1260 (11th Cir. 2021).

"Proper exhaustion 'means using all steps that the agency holds out, and doing so properly . . . .'" *Varner*, 11 F.4th at 1260 (quoting *Woodford*, 548 U.S. at 90) (emphasis removed). The agency, not the PLRA, determines the proper method of exhaustion.

Failure to exhaust administrative remedies is an affirmative defense that the defendant bears the burden of proving. *See Jones*, 549 U.S. at 216; *Varner*, 11 F.4th at 1257. Exhaustion is analyzed in two steps. *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008).

First, a district court must determine whether the complaint should be dismissed for lack of exhaustion while taking the plaintiff's version of the facts as true. *Varner*, 11 F.4th at 1258. Second, if the complaint is not subject to dismissal at the first step, the court must "make specific findings in order to resolve the disputed factual issues related to exhaustion." *Turner*, 541 F.3d at 1082. The court then decides whether the plaintiff exhausted his administrative remedies. *Varner*, 11 F.4th at 1258. District courts may not resolve factual issues regarding exhaustion when such issues are intertwined with the merits of any underlying claim. *Perttu v. Richards*, 605 U.S. 460, 479 (2025).

DISCUSSION

## A.    Plaintiff's Grievances Related to this Action

### 1.    *Grievances regarding Defendants' Alleged Failure to Protect Plaintiff*

***Plaintiff's Informal Grievance.*** On August 18, 2022, Plaintiff filed an informal grievance to the assistant warden of Apalachee Correctional Institution. Doc. 1 at 10; *see* Fla. Admin. Code r. 33-103.005(1). This grievance bears the log number "102-2208-0258," and states:

> I am writing this informal grievance against P-dorm officers who were either assigned to P dorm or were in the both at the time that I was attacked, as I just learned during my PM investigation on August 5, 2022, that there were in fact (2) two officers present inside the officers station at the time that I was attacked. I attempted to notify officers during a walk through and was ignored and then directly after, attacked a second time after packing my property. I was unaware that both officers went back in the officers station and were present during these attacks because neither one attempted to help me or difuse the situation in any way. No chemical agents, no yelling or attempting to verbally break it up or stop this attack. I was stabbed a total of 6 times and had to be taken to I.C.U. and nearly died, when I know that just the presense of an officer would have stopped this or at least minimized the damage. This is being filed because I've been made aware of new evidence.

Doc. 1 at 10 (errors in original).[2]

On August 22, 2022, the assistant warden denied Plaintiff's informal grievance and responded: "Security staff were interviewed and stated, staff responded to the incident entered the dormitory, all actions ceased, and proper actions were taken. Grievance 102-2208-0258 Denied." *Id.*

***Plaintiff's Formal Grievance.*** On August 28, 2022, Plaintiff filed a formal grievance to the warden of the Apalachee Correctional Institution. *Id.* at 12; 43-2 at 3; *see* Fla. Admin. Code r. 33-103.006(1). This grievance bore the log number "2208-102-198," and in it, Plaintiff stated:

> I am writing this grievance in response to the denial of my informal of the same nature. My issue is the fact that 2 officers were in the control station in P dorm and watched me be attacked one time in the bathroom and then a couple minutes later while walking through for formal count. as I was packing my property I attempted to get help from one of the officers but was basically ignored. These two plain examples of negligence of duty lead to me being attacked a second time and this time severely and with weapons. I was stabbed a total of six times and durng this attack, once again no officer in the booth, two at least attempted to interviene and help me,

---

[2] To enhance clarity, the undersigned slightly altered the form of Plaintiff's grievances, but not the substantive content.

knowing I was in grave danger. The fact that they never once attempted to help me during this second attack is another example of negligence of duty. They claim that they alerted staff but they are staff too so it stands to reason they should help too, since they are on scene and able to stop immediately this attack. By the time anyone even showed up, minutes later I was already passed out and bleeding out, my lung collapsed. The main thing though, even besides these two officers refusing to do their job is the fact that they saw this first attack, and were warned by me of the second possible attack and still, with 2 chances to stop this second attack, failed to act. This is the issue in my grievance, negligence of duty. I would like this matter taken seriously and someone held responsible.

Doc. 43-2 at 3 (errors in original).

On September 7, 2022, the FDC denied Plaintiff's grievance and responded: "The response you received on informal grievance log # 102-2208-0258 has been reviewed and is found to adequately address this issue. Grievance Denied." Doc. 1 at 11.

***Plaintiff's Administrative Appeal.*** On September 12, 2022, Plaintiff appealed the denial of his grievances to the FDC secretary. *Id.* at 14; *see* Fla. Admin. Code r. 33-103.007(1). This appeal bore the log number "22-6-27879." Doc. 1 at 14. In his appeal, Plaintiff stated:

This grievance is in response to the institution denying both former grievances about this same issue. This is a simple issue and if the officers who were present at the time that I

was attacked multiple times would have responded immediatly or have interviened as I asked, I would have never been stabbed. On the digital footage that recorded this entire incident, July 20, 2022 between about 10:00pm and the exact time of 10:15pm (10:15pm being the time indicated on my incident report) the cameras will show me going towards the bathroom in the back of the dorm and almost immediatly 3 or more Hispanic inmates going quickly into the same area. Even if they can't see directly into the sink area, it is obvious by the movements of these 3 inmates and the fact that everyone in the dorm just happened to start looking our way that an altercation was taking place. The cameras no doubt seen this. After being attacked, I went to my bunk and packed my property. During the process of packing, master roster count took place and 2 officers came in and did a head count. I attempted to get help from one of the officers closest to me, telling her I needed to leave the dorm, my life was in danger. She didn't even look my way, only stating "I'm busy." She had just observed me being attacked by 3 inmates, it is impossible to claim other wise if she was doing her job and watching the dorm, the bathroom is literally in direct line of sight and then ignored my plea for help out of this dangerous situation. These 2 actions, neglegence of duty in every way, resulted in the next phase of this video footage. Me being stabbed 6 times and nearly being killed. During this last and most viccious attack, her and another officer was in the officers station and neither one ever tried to stop this attack, delay it or even show a presence in the dorm at all. The only time any officer actually came into the dorm physically was when the attack was completely over. By then I was close to death, having to defend myself from an attack that should have never been allowed to take place, had these two officers who were present have either broke up the first attack and removed all parties from the dorm or been proactive and prevented the second attack when I called to her for help during their master roster count walk through. The captain of day shift, Captain

Coldhran told me that he saw this video from start to finish and that he seen the beginning of the first altercation, even going so far as to claim he saw me walk by the shower on my way to the sink's on the other side, so there is no doubt what I am claiming here is clear for all to see. If the camera could see it, and the O.I.C. himself made this admission, then the two officers assigned to P-dorm can not deny seeing the same things, supposing of course they were doing their job and observing the dorm they were paid to observe. The fact that all of these things took place, back to back and these two officers never once tried to interviene is a clear case of neglence of duty, resulting in great bodily harm for 3 people, myself included going to the hospital by ambulance. This all could have and should have been avoided. I would like the officers responsible for allowing this attack to be carried out, despite the knowledge I was in dager, to be held responsible. Thank you for your integrity in this situation and for your help.

*Id.* at 14–15. (errors in original).

On September 22, 2022, the FDC denied Plaintiff's appeal. *Id.* at 13. In doing so, the FDC stated: "The response that you received at the institutional level has been reviewed and is found to appropriately address the concerns that you raised at the institutional level as well as the Central Office level. Your administrative appeal is denied." *Id.*

### 2.    *Grievances Regarding Placement in Close Management*

***Plaintiff's Formal Grievance.*** On September 7, 2022, Plaintiff filed a formal grievance to the warden of the Apalachee Correctional

Institution.[3] Docs. 49-1 at 7; *see* Fla. Admin. Code r. 33-103.006(1). This

grievance bore the log number "2209-102-048," and in it, Plaintiff stated:

> I am writing this formal grievance because of a CM1 approval
> when I was the victim of a hate crime attack. Basically I was
> attacked 2 separate times by the same group of gang members
> and because the 2 officers that were in the officers station
> didn't act to help me or to stop these attackers, I was forced to
> defend myself. This was obviously a life or death situation and
> even though I defended myself from this hate crime, my life
> was still almost taken due first to these gang members
> attacking me and 2nd to the fact that the officers failed to act
> in a timely manner. I was stabbed 6 times and was rushed to
> the hospital where I spent almost a week recovering from life
> threatening injuries. I was attacked 2 times for being gay and
> then recommended and approved for CM1, the same exact
> punishment the attackers got, only because I defended myself
> and stood my grund for my personal safety. Also the CM
> recommendation was very vague and misleading saying only
> that weapons were found, people went to the hospital and that
> it is believed to be gang related. Well, I never had a weapon, I
> went to the hospital and I am not gang related. So that leaves
> really nothing of substance from the recommendation in
> which to approve me for CM. Therefore I should obviously be
> taken off CM and returned to G.P. Thank you very much.

Doc. 49-1 at 7 (errors in original).

---

[3] Plaintiff's informal grievance regarding close management is not
further discussed because it does not mention the attacks of July 20, 2022
or McKinnie and Green's alleged deliberate indifference to Plaintiff's
medical needs. Doc. 49-1 at 8.

On September 13, 2022, the FDC denied Plaintiff's grievance and responded: "You have been placed on CM1 based on the incident that occurred on 7/20/22, during this incident numerous inmates received injuries and medical care. You were all in a mutual combat where injuries were sustained to others. Therefore, your CM1 placement will remain. Grievance denied." Doc. 49-1 at 6.

***Plaintiff's Administrative Appeal.*** On September 13, 2022, Plaintiff appealed the denial of his grievances to the FDC secretary. Doc. 49-1 at 3–5; *see* Fla. Admin. Code r. 33-103.007(1). This appeal bore the log number "22-6-28556." Doc. 49-1 at 3. In his appeal, Plaintiff stated:

> I am writing this Appeal because I have been approved for CM1 for defending myself an attack that was motivated by a hate crime. These are the facts of the case, as I will state below, and it will show that I should never been recommended, much less approved for CM (1) I was attacked on two separate occasions + the very first attack happend in plain view of 2 officers and was carrid out by 3 members of the latin King organization. There excuse for attacking me that I walked by the shower on my way to a completely different sink area that is seperated by a block wall and about 15 to 20 feet. I never entered the shower area or looked that way. But it seems that sense im openly gay that everyone here [illegible] Administration agrees that this simple innocent act warrented this brital attack. Also for the record everything I say here can be coraberated by video footage. (2) after this initial attack I thought it best to leave this environment so I

immedately started packing my property and waited to alert one of these officers personally because formal count happend to be in progress. Even though these 2 officers were clearly aware of the activities going on, specificlly the attack on myself, I agen tried to alert them to my dire situation in order to be [illegible] from the dorm only to be told im busy and never even looked at me (3) As the officer was leaving several of these gang members started yelling racial and anti gay slurrs, including one that stick out in my mind "You [expletive] got to leave this dorm or ill kill you, especially you [expletive]." Sence the officers were clearly not going to intervene and my life was in mortal danger my only logcal choice and decision was to attempt to talk my way out the situation. Two otter inmates who noticed my situation and were also gay felt they were possibly collateral targets decided to attempt to go with me to talk to these oppresors (4) we were immediatly attacked verbally followed by physical attacks almost simutaniously with knives stick buckets. Myself, Brandon Williams #130662, Charles Gaddis #127714, were forced to defend ourselves against this abrupt and unprovoked attack. Myself + the 2 others never had wepons (6) There is at least 8 Latin King members against myself and the 2 mentioned names and they all had at least one weapon each. (7) The three of us had to be taken to the hospital, myself to I.C.U., with 6 stab wounds, a collapsed lung and I was informed I flatlined twice due to a lung collapse and major blood loss. Charles Gaddis was also critical and died but was also recessitated and that was also due to blood loss due to a face and neck wound. Brandon Williams had multiple stab wounds to the lower neck and shoulders. Not one of the Latin King's had to go to the hospital. (8) All 6 of the Latin King members recieved disciplinary actions in the form of D.R.'s and neither myself or the two mentioned names did, which in itself is further proof that this institution knows we were strictly victims attempting to defend or lives from this unwarrented hate crime. (9) Since it was at least a couple

weeks after these Latin King's were served CM papers that I myself recieved CM papers, while also on Protective Management which none of the Latin Kings were, say to me two obvious things: one, that somehow Administration came to the agreement several weeks after the fact that I was rightfully attacked because I am a gay black male because in the beginning I was treated as the victim I was and was never in danger of any disciplinary action. Two, that I have no right to defend myself at any cost, even when 2 sworn D.O.C. officers were present through all of this and refused to act or do their job in the slightest sense or attempt to stop or even delay or hinder this attempted deadly attack even though they had several opportunities. (10) I am not a gang member even though the CM Recommendation stated this is believed to be STG Related and purposefully slanted in a way as to portray Everyone involved as a gang member, and also made to seem that I had a weapons, or never really identified the fact that I was critically injured or severly outnumbered during this attack. (11) This attack was motivated by hate, hate for myself because I am gay, black and open about it, and this was confirmed by the attackers themselves during this attack. These are the facts as I know them, (11) in total that absolutly prove I am a victim in this and had no choice in this matter but to physically defend myself. As no other help was available and all avenue's of escape were cut off there is no way at all to justify putting me on CM1 right beside the people who attacked me, as if I also had a knife and attacked them because of what they believe, like our actions were somehow equal. Clearly they were not even close and this is an obvious miscarriage of justice. Please help me, I have been persecuted and suffered enough, physically, mentally and emotionally because of this and do not deserve after all of this to be stuck in confinement behind a door for 18 months or longer. My only crimes in this matter were to be gay and to defend myself from attack. Thank you so much for your unbiased help.

Doc. 49-1 at 3–5 (errors in original).

On October 5, 2022, the FDC denied Plaintiff's appeal. *Id.* at 2. In doing so, the FDC stated: "The response that you received at the institutional level has been reviewed and is found to appropriately address the concerns that you raised at the institutional level as well as the Central Office level. Your administrative appeal is denied." *Id.*

**B.    Exhaustion of Plaintiff's Administrative Remedies**

**1.    *Step 1 of the Turner Analysis***

McKinnie and Green contend that Plaintiff failed to exhaust the grievance process for his claim of deliberate indifference to a serious medical need. Docs. 58 at 9; 106 at 9. Plaintiff disagrees. Doc. 64 at 1; *see also* Doc. 109 at 1.

At step one of *Turner*, Defendants have not demonstrated that dismissal is appropriate because the District Court must accept as true Plaintiff's contention that he exhausted his administrative remedies. *See Varner*, 11 F.4th at 1258. The District Court, therefore, must proceed to step two of the *Turner* analysis and determine whether the evidence

shows that Plaintiff exhausted his administrative remedies. *See Turner*, 541 F.3d at 1082.

## 2.  *Step 2 of the Turner Analysis*

The parties dispute whether Plaintiff's grievances contained sufficient facts to alert FDC officials to Plaintiff's claim regarding the interference with medical care. Docs. 58 at 10; 64 at 3; 106 at 10; 109 at 5.

For purposes of the exhaustion requirement, a grievance is sufficient when it alerts prison officials to the nature of the wrong for which the inmate seeks redress. *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002); *see also Brown v. Sikes,* 212 F.3d 1205, 1209–10 (11th Cir. 2000) (a plaintiff should "provide during the grievance process all of the information concerning his claims that he has or reasonably could obtain"). The "grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming." *Strong*, 297 F.3d at 650; *Johnson v. Johnson*, 385 F.3d 503, 518 (5th Cir. 2004). A level of specificity that would satisfy the notice-pleading standard suffices.

*Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004); *Harvard v. Inch*, 411 F. Supp. 3d 1220, 1244 (N.D. Fla. 2019).

Plaintiff's grievances do not state that Plaintiff was denied medical care. Plaintiff complained only about Defendants' failure to protect him from attacks by other inmates. In his deposition, Plaintiff confirmed that he filed the grievances because Defendants did not protect him, and he wanted protective custody. *See* Doc. 78-2 at 63–64.

Although to exhaust administrative remedies a plaintiff's grievances need not include the phrase "deliberate indifference to a serious medical need," a plaintiff must provide sufficient information to alert the prison officials to the relevant issue so that prison officials might investigate the inmate's real complaint. A grievance that "does not mention or complain about the alleged denial of medical treatment" fails to grieve the issue of deliberate indifference to a serious medical need–or in this case, interference with medical care. *Shaffer v. Maddox*, No. CV 314-070, 2015 WL 1401629, *4 (S.D. Ga. Mar. 26, 2015); *cf. Johnson*, 385 F.3d at 518 (concluding that grievances that alleged officers failed to

protect the plaintiff from assaults, but did not mention the plaintiff's race, were insufficient to exhaust equal protection claim).

Plaintiff's grievances were insufficient to alert the FDC to Plaintiff's belief that anyone was deliberately indifferent to Plaintiff's medical needs. Plaintiff, therefore, failed to exhaust his administrative remedies as to this claim, and the PLRA requires the District Court to dismiss this claim.

## C.    <u>McKinnie's Withdrawn Request about Punitive Damages</u>

Defendant McKinnie's motion to dismiss also requested "dismissal" of Plaintiff's request for punitive damages. Doc. 58 at 1. On February 6, 2025, McKinnie withdrew this request. Doc. 105. The District Court, therefore, need not address McKinnie's withdrawn request regarding punitive damages.

### CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that the District Court:

1.    **GRANT** Defendant McKinnie's motion to dismiss Plaintiff's claim of deliberate indifference to a serious medical need. Doc. 58.

2.     **GRANT** Defendant Green's motion to dismiss Plaintiff's claim of deliberate indifference to a serious medical need. Doc. 106.

3.     Return this case to the undersigned for further proceedings.

At Pensacola, Florida, this <u>18th</u> day of August, 2025.

<u>/s/ *Michael J. Frank*</u>
**Michael J. Frank**
**United States Magistrate Judge**

## NOTICE TO THE PARTIES

**The District Court referred this case to a magistrate judge to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b). Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**